Fowler, J.
 

 The case is an appeal by the Wisconsin Employment Relations Board, hereinafter referred to as the “state board,” from judgments of the circuit court vacating orders of the board and dismissing the complaints charging the Wisconsin Motor Corporation, hereinafter referred to as the “company” or the “employer,” with unfair labor practices under the State Employment Relations Act. The National Labor Relations Board, hereinafter referred to as the “federal board,” on application had supervised an election to select a bargaining agent to act for the employees in collective bargaining with the company, and found the company was engaged in interstate commerce and had certified the union as such agent. The state board took jurisdiction of the complaints and found the company guilty of unfair labor practices charged and issued a “cease-and-desist” order. The union brought actions to vacate the orders and the state board petitioned for their enforcement.
 

 The complainants, Schoemann and Bezie, were employees of the company of long standing and had priority rights respecting tenure of employment and re-employment. Both were
 
 *431
 
 members of an A. F. L. union. The company entered into a contract with the respondent unión, which is affiliated with the C. I. O. Sec. 3, art. I, of this contract reads as follows:
 

 “All new employees at the end of their probationary period shall be required to either join the union or secure a working permit from the union. The union agrees that the cost of its working permits shall at no time exceed one and one-half times the cost of its monthly dues. The members of the union shall remain in good standing in the union as a condition of employment. Present employees who at the date of signing of this agreement are not members of the union shall be required to secure a working permit from the union as a condition of further employment. The union reserves the right to refuse to grant either membership in the union or a working permit of the union to not to exceed one per cent (1 %) of the employees covered by the terms of this agreement.”
 

 The complainants were discharged by the company for not being either members of the union or having work permits issued by it. The state board found that the making of this contract and discharging employees for not being members of the union or having a permit issu'ed by it constituted an unfair labor practice under the Wisconsin Employment Relations Act because it discriminated “in regard to hiring and tenure of employment” and thereby encouraged membership in the union.
 

 The respondent contends that the judgment of the circuit court should be affirmed for two reasons : (1) That the .board had no jurisdiction to entertain the proceeding because exclusive jurisdiction of controversies as to unfair labor practices involving interstate commerce is vested in the National Labor Relations Board; (2) that the findings of the state board are not supported by the evidence. The appellant contends to the contrary. The claims of the parties under (1) will first be considered.
 

 (1) The extreme positions of the parties on this question may be stated as follows:
 

 
 *432
 
 The union claims that where a national act makes a specific regulation respecting interstate commerce, and commits the enforcement of that regulation to a federal board, the states have no power to make a regulation respecting that specific regulation, and no state administrative board has jurisdiction of a controversy respecting that specific regulation.
 

 The state board claims that the supreme court of the United States has decided the proposition above stated against the union in
 
 Allen-Bradley Local v. Wis. E. R. Board,
 
 315 U. S. 740, 62 Sup. Ct. 820, 86 L. Ed. 1154, and
 
 Hotel Employees' Local v. Wis. E. R. Board,
 
 315 U. S. 437, 62 Sup. Ct. 706, 86 L. Ed. 946. A statement in the
 
 Allen-Bradley Case, supra,
 
 may be noted for its indirect bearing on the proposition contended for by the union. It is said at page 751 of the opinion: “Indeed, if the portions of the state act here invoked are invalid because they conflict with the federal act, then so long as the federal act is on the books it is difficult to see how any state could under any circumstances regulate picketing or disorder growing out of labor disputes of companies whose business affects interstate commerce.” This implies that if the provisions of the statutes here involved do conflict then the state board does not have jurisdiction of the instant cases. But it definitely makes the jurisdictional question rest on absence of conflict and leaves for consideration whether they do conflict. The
 
 Allen-Bradley
 
 opinion is to the express point that the court deals only with specific cases, and in deciding one case does not anticipate any other, and leaves other cases involving a different state of facts to be determined when that case comes before it upon a record appropriately raising the precise point involved. Thus the
 
 Allen-Bradley Case
 
 cannot be taken as anticipating or indicating the decision in the instant cases. And while the
 
 Allen-Bradley
 
 and
 
 Hotel Employees’ Cases
 
 upheld the jurisdiction of the state board in those cases it does not follow as the state board contends that those cases settle the jurisdictional question in all cases. The ground on which those cases upheld the jurisdiction of
 
 *433
 
 the state board was that in those cases there was no conflict between the state and federal acts respecting the matter there in controversy, because the state act made conduct of employees an unfair labor practice, and the federal act contains no provision relating to the conduct of employees. Violence of employees in conducting strikes was one of the unfair labor practices involved in those cases and the United States supreme court decision considers no others, and here no violence and no conduct of employees is involved. The instant Schoemann case only involves the questions whether the employer by its conduct committed an unfair labor practice under the act and whether the federal act contains provisions as to that matter. The question here is whether the provisions of the two acts so conflict as to oust the state board of jurisdiction, and whether such conflict does exist must be determined by comparison of the federal and state statutes defining unfair labor practices. Before making this comparison we will discuss the contentions of the union and the state board above stated.
 

 The union cites as authority for its claim that the board is without jurisdiction
 
 Gilvary v. Cuyahoga Valley R. Co. 292
 
 U. S. 57, 54 Sup. Ct. 573, 78 L. Ed. 1123;
 
 Napier v. Atlantic Coast Line R. Co. 272
 
 U. S. 605, 47 Sup. Ct. 207, 71 L. Ed. 432;
 
 Erie R. Co. v. New York,
 
 233 U. S. 671, 34 Sup. Ct. 756, 58 L. Ed. 1149;
 
 Apex Hosiery Co. v. Leader,
 
 310 U. S. 469, 60 Sup. Ct. 982, 84 L. Ed. 1311;
 
 National Labor Relations Board v. Algoma Net Co.
 
 (7th Cir.) 124 Fed. (2d) 730.
 

 Erie R. Co. v. New York, supra,
 
 was an action to recover a penalty under a state statute limiting hours of labor of a certain class of employees to eight hours in twenty-four. Congress had enacted a statute limiting the hours of that class by railroads engaged in interstate commerce to nine hours in twenty-four. The railroad was engaged in interstate commerce. The case holds that there could be no division of the field of regulations. A judgment awarding recovery was reversed.
 
 Napier v. Atlantic Coast Line R. Co., supra,
 
 is to the same effect. This case reversed
 
 Cab Curtain Cases,
 
 188 Wis.
 
 *434
 
 232, 205 N. W. 932, involving the Wisconsin statute requiring railroads to provide curtains for the engine cab to protect employees stationed therein from inclement weather. The
 
 Apex Hosiery Co. Case, supra,
 
 does not apply as it only involved a federal act. The opinion in
 
 Gilvary v. Cuyahoga Valley R. Co., supra,
 
 page 60, states : “The power conferred upon the congress [in respect'of interstate commerce] is such that when exerted it excludes and supersedes state legislation in respect of the same matter,” but the point was not involved in the case.
 

 It must be conceded that if the case were to be ruled wholly upon the
 
 Erie R. Co.
 
 and
 
 Napier Cases, supra,
 
 and the
 
 obiter
 
 statement above quoted from the
 
 Cuyahoga Valley R. Co. Case, supra,
 
 respondent’s contention would have to be sustained. But the United States supreme court has gone a long way since those cases were decided and it is still on its way. The decisions of the supreme court in
 
 Allen-Bradley Local, etc., v. Wis. E. R. Board, supra,
 
 and
 
 Hotel Employees’ Local v. Wis. E. R. Board, supra,
 
 are directly contrary to the rule of the cab-curtain case that it is immaterial that the statute involved in the cab-curtain case was enacted in the exercise of the police power of the state. That provisions of the state act involved in the
 
 Allen-Bradley
 
 and
 
 Hotel Company Cases
 
 were enacted in exercise of the state’s police power was given vital force by the supreme court of the United States in sustaining the state-board’s jurisdiction to enter the orders involved in those cases. The
 
 Allen-Bradley Case
 
 also definitely determines that the mere fact that the congress has enacted a statute defining unfair labor practice affecting interstate commerce and creating a federal agency for its enforcement does not preclude a state legislature from also enacting a statute on the same general subject and creating an agency for enforcing the state statute, this regardless of how specifically the practice may be defined in the federal act. The
 
 Allen-Bradley Case
 
 also determines that the state agency may take jurisdiction of proceedings to enforce the state act unless there is conflict be
 
 *435
 
 tween the two acts. The thing that determines jurisdiction of the state board is conflict between the two acts, not the mere fact that the congress has passed a federal act affecting interstate commerce.
 

 In the case of
 
 Wisconsin Labor R. Board v. Fred Rueping L. Co.
 
 228 Wis. 473, 279 N. W. 673, the question of conflicting jurisdiction between state and national boards in unfair-labor-practice cases affecting interstate commerce was carefully considered. We consider the opinion in that case well reasoned and that it declares the law as it ought to be as to the jurisdiction of the state board to entertain and decide under the state act all cases of unfair labor practices. That case did not involve violence and the opinion goes upon the proposition that the national act does not interfere with the state’s exercise of its police powers, and that the state act was enacted in the exercise of those powers. The opinion deals specifically with title 29, USCA, sec. 158 (3), with which sec. 111.06 (1) (c), Wis. Stats., as is hereinafter particularly shown, is practically identical, and definitely holds that the state board has jurisdiction to administer par. (c) of the state act unless the national board has taken jurisdiction of the particular controversy, at least until the national board takes jurisdiction of the particular controversy. That Wisconsin employees and employers employing a comparatively small number of employees should have this right is essential to their protection, as the expense of appeal to the federal board is practically prohibitive to them. It would seem that a sovereign state may lawfully do this much. If not, the state is shorn of its last vestige of state rights. If the state may not create a tribunal to determine the rights of its citizens under its own statutes, rather than require them to submit to the expense and inconvenience of resorting to the federal board, to get those rights determined, even though interstate commerce is indirectly and remotely and trivially affected, sovereignty is practically abolished. It is “not lightly” to be inferred “that congress by the mere passage of a federal act has impaired the traditional sovereignty of the
 
 *436
 
 several states.”
 
 Allen-Bradley Case, supra,
 
 p. 749. The federal board should at least be left to apply the rule of comity in the latter case. The
 
 AUen-Bradley
 
 and
 
 Hotel Employees' Cases
 
 involved violence by employees and labor unions, and the United States supreme court’s decisions in these cases do not go so far as to sanction jurisdiction of the state board in any other class of cases. However, it is quite true, as held in the
 
 Rueping Case, supra,
 
 that secs. 111.04 and 111.06 (1) (c), Wis. Stats., were enacted in exercise of the police power and that the police power may as reasonably be held to validate the state board’s taking jurisdiction to enforce the unfair-labor-practice provisions of the state act when violence is not involved as when it is. We are unable to perceive why a state tribunal may not as reasonably be held to have jurisdiction to enforce an unfair-labor-practice provision of a state statute identical with the provision of the national statute, unless or until the national tribunal having jurisdiction to enforce the national act has taken jurisdiction, as it may enact a criminal statute identical with a national statute and enforce the state statute in the state courts. It is to be noted that
 
 Erie R. Co.
 
 and
 
 Napier Cases, supra,
 
 relied on by the respondent were cited in the
 
 Riteping Case, supra,
 
 and the conclusion reached in the latter was reached because, in the opinion of the court, other decisions there cited seemed to render them not controlling under the circumstances there and here involved.
 

 It is also to be noted that in
 
 National Labor Relations Board v. Algoma Net Co.
 
 (7th Cir.) 124 Fed. (2d) 730, the circuit court of appeals considered the matter of national and state jurisdiction in unfair-labor-practice cases. It was there con-tended that as the state board had first taken jurisdiction of the matter involved, the national board, on the principle of comity, should not have taken jurisdiction. The
 
 Rueping Case, supra,
 
 is there considered, and seems to- be tacitly accepted as correctly stating the rule as to the state board’s
 
 *437
 
 jurisdiction. The jurisdiction of the national board is sustained on the ground that the record did not show that the same matter was involved before the state board that was before the national board. The rule of the
 
 Rueping Case
 
 is also accepted in
 
 National Labor Relations Board v. Eclipse Moulded Prod. Co.
 
 (7th Cir.) 126 Fed. (2d) 576.
 

 We will now compare the particular provisions of the statutes wherein the respondent claims that conflict exists. For convenience of comparison the statutes so far as material for the purpose of comparison are set out in the margin.
 
 [1]
 

 
 *438
 
 Inspection of the parallel columns in the margin shows that sec. 157 of the federal act and sec. 111.04 of the state act are practically identical down to the last sentence in sec. 111.04, “and such employees shall also have the right to refrain from any or all of such activities.” This sentence is not in sec. 157, but it really adds nothing to sec. 111.04. By implication it inheres in the previous portion óf the section. The purpose of the section manifestly is to give employees freedom of choice as to joining or assisting the activities of labor unions, and to protect employees in exercising such freedom of choice, and such freedom of choice is not protected unless the employee’s right not to join or assist is guaranteed as well as his right to' join or assist. So as to sec. 157 of the federal act. That section impliedly guarantees the employee’s right not to join or assist the same as it guarantees his right to join or assist.
 

 Inspection of the parallel columns also shows that sec. 158 (1) and (3) of the federal act and sec. 111.06 (1) (c) of the
 
 *439
 
 state act are absolutely identical down to the provisos contained in (3) and (c), the only difference being in the placing of the phrase beginning “By discrimination” at the beginning of (3) and in placing it in (c) next before the proviso. Both provisos cover no contracts but all-union contracts. The term “all-union” is used in (c) and not used in (3)' but the proviso of (3) by its express terms applies only to contracts making membership in a labor union a condition of employment, and such a contract is an all-union contract. The proviso in (c) makes a three-fourths vote of employees essential to validity of such an agreement and (3) does not, but as the instant agreement is not an all-union agreement no conflict in the two sections is involved in the instant case. Both (3) and (c) expressly make entering into any contract that is not an all-union contract an unfair labor practice if it encourages membership in a union by requiring such membership as a condition of remaining in or obtaining employment. As first above stated, the state board found that the contract and requiring compliance with it by joining or remaining in the union or securing a permit from it as a condition of employment encouraged membership in the union. The question of jurisdiction therefore depends on whether the finding of the board is sustained by the evidence. If it is, the state board had jurisdiction.
 

 We adhere to the ruling of the
 
 Rueping Case, supra,
 
 and hold that the state board had jurisdiction to proceed unless and until the federal board should assume jurisdiction of the particular controversy.
 

 The respondent also urges that the state board was without jurisdiction because the national board assumed jurisdiction to supervise an election at which the employees of the company chose the respondent union as their bargaining agent. We consider this position untenable. In supervising the election the national board did not take jurisdiction of any unfair-
 
 *440
 
 labor-practice controversy. The proceeding was not adverse. The national board’s function was merely to certify the result of the election.
 
 Southern S. S. Co. v. National Labor Relations Board
 
 (3d Cir.), 120 Fed. (2d) 505. The only factual finding authorized by the national board to be made on application to it for the appointment of a bargaining agent is that the employer is engaged in commerce as defined by the national act. 29 USCA, sec. 159 (c). The national board makes no finding as to unfair labor practices until its powers are invoked under sec. 160 of that act, and no charge of unfair labor practice was before it when it certified the union as bargaining agent.
 

 (2) Does the evidence support the finding of the state board? Both applicants, Schoemann and Bezie, were employees of the company at the time the contract involved was entered into. Each was a member of an A. F. L. union and each had priority rights as to tenure of employment and reemployment. Each was discharged because he was neither a member of the respondent union nor had a work permit issued by it. The A. F. L. members were one day called together and told they must take out permits for June and July by 4 o’clock. Bezie took out a permit for these two months but refused to take out any for August. Schoemann applied for a permit but the union agent who was issuing permits ran out of blanks, and told those waiting, including Schoemann, that they should sign a promise to take out a permit and go back to work and get their permits later. Schoemann signed the promise and went for his permit before commencing work on the day he was to get it but could not find the union agent who was issuing the permits and went to work. He did not go again. Schoemann claims that while at work a few days later he was visited by a company official and a union agent and asked to show a permit and not having one was told he was discharged. There is a conflict as to whether he then tendered the fee for permits for
 
 *441
 
 June and July. He claims the union agent then said a permit would be refused him under the one per cent (1
 
 %
 
 ) provision o f the contract. The board made no finding as to these matters but whatever the fact as to them may be it is immaterial. As first above stated, the applicants were in fact discharged pursuant to the contract, because they did not have permits and the discharges were made by the company on request of the union and this is admitted. The findings of fact of the board over which the controversy exists in the Schoemann case, part of which are stated with the board’s “conclusions of law” are as follows : 1. The company, “by discrimination in regard to the hiring and tenure of employment of William Schoemann encouraged membership in the . . . [respondent union] and is engaging in unfair labor practices within the meaning of sec. 111.06 (1) (c) of the Wisconsin statutes.” 2. Finding 2 is in effect that the company committed an unfair labor practice by entering into the contract involved without a vote of three fourths of the employees as required by sec. 111.06 (1) (c) and dismissing Schoemann pursuant to it.
 

 As the contract is not an all-union contract the lack of a vote of the employees is not directly material. The validity of the order entered must stand wholly on finding 1 above stated. This finding is in effect that the making of this contract and discharging the employees pursuant to it for not having a work permit constituted an unfair labor practice because the discrimination involved encourages membership in the respondent union.
 

 The crucial point of the case thus is whether the evidence supports finding 1 of the board. The board determined that it did. That finding must be sustained if the evidence before the board warrants the board’s conclusion of fact. The respondent urges that there is no evidence whatever to support that finding because nobody gave any evidence that it so operated. We consider that the conclusion is warranted from
 
 *442
 
 the lánguage of the portion of the contract in controversy, the signing of it by the company, and the discharge of employees pursuant to it for not being members of the union or procuring permits from it. The contract provides'that employees who were members of the union at the time it was entered into should retain their membership and keep in good standing in the union, which implies payment of dues, or be discharged. This certainly encourages membership in the union. As to the work permits, the cost is one and one-half times the monthly membership dues. There is nothing in the evidence to show that this is not more of a finanical burden on the employees than maintenance of membership in the union. Requiring payment of one and one-half times the union dues for a permit obviously assists the union and sec. 157 of the federal act, as above stated, by implication makes denial by an employer to employees of the right not to assist a labor union an unlawful labor practice. We think that the board was warranted by the evidence in finding the company guilty of an unfair labor practice.
 

 The trial judge relied in dismissing the complaint on his conclusion that the instant contract is valid because made by the bargaining agent of the company employees and the company. That this contract was valid unless the signing of it and discharging employees for not complying with it operated to encourage joining or assisting the union we agree. If it were an all-union contract question would arise whether the want of a three-fourths vote of the employees made it invalid. And in that case the question would arise whether a conflict existed between the state and federal acts because the state act by its terms requires the three-fourths vote of employees as prerequisite for such a contract and the federal act does not so require. The federal act by its terms does not make a three-fourths vote of employees necessary, but the senate committee report that recommended the federal act for
 
 *443
 
 passage definitely indicates that it was intended by the act to leave to the states the matter of validating or invalidating “closed-shop” agreements, which an all-union contract is.. Senate Reports on Public Bills, Col. 9879, Report 573. But that question is not here involved. The validity of the instant contract rests wholly on whether it and action by the company pursuant to it encourages joining or assisting the union.
 

 Upon finding 1 the state board ordered that the company should, (1) cease and desist from, (a) encouraging membership in the respondent unión “by discharging, refusing to reinstate or otherwise discriminating against its employees in regard to hiring and tenure of employment or any term or condition of employment;” (b) giving effect to sec. 3 of art. I of the agreement involved, which section contained the provisions first above stated. (2) Take the following affirmative actions : (a) Offer to Schoemann reinstatement of his former position or substantially equivalent position without prejudice to his seniority and other rights and privileges, (b) Make Schoemann whole for any loss of wages suffered by reason of his discharge by paying to him the full amount of wages he would have earned from the date of his discharge to the date of his reinstatement less earnings if any received by him during such period, (c) Immediately post notices throughout its plant and maintain them for sixty days that it would cease and desist from encouraging membership in the respondent union by any discrimination in the hiring or tenure of employment of any of its employees, and that it would not recognize or enforce the provision of the contract requiring as condition of employment that its employees either become or remain members of the union or obtain a working permit from it as a condition of further employment, (d) Notify the state board of what steps it took to comply with the order.
 

 The finding as to encouragement of membership in the union being supported, the action by the company pursuant to the
 
 *444
 
 order is by force of the state statutes an unfair labor practice, and the cease-and-desist portions of the order of the board must be enforced.
 

 As to the affirmative portions of the order in Schoemann’s case we consider them valid. Schoemann was wrongfully discharged and was therefore entitled to reinstatement and to payment of wages until he procured another job. The other affirmative portions of the order are proper under sec. 111.07 (4), Wis. Stats.
 

 The same order against the company was made in the Bezie case as in the Schoemann case and warranted upon the same evidence and for the same reasons.
 

 In the Bezie case an order was also made against the respondent union based upon a part of the board’s cross petition therein that was not contained in its cross petition in the Schoe-mann case. The Bezie cross petition charged that the union committed an unfair labor practice in that it violated sec. 111.06 (2), (b), Wis. Stats., by inducing the company to sign the contract and to discharge Bezie pursuant to it and thereby interfered with Bezie in the enjoyment of the right guaranteed to employees by sec. 111.04. As in Schoemann’s case, so in Bezie’s, the company interfered with the employee’s right to refrain from becoming a member of or assisting the activities of the union, and sec. 111.06 (2) (b) makes it an unfair labor practice for an employee to induce an employer to interfere with any of his coemployees in the enjoyment of their rights under sec. 111.04, and sub. (3) of sec. 111.06 makes it an unfair labor practice for the union to do anything that an employee may not do under par. (b) of sub. (2). Manifestly the discharge was induced by the union.
 

 We'consider also that the inference that the union as the bargaining agent induced the company to make the contract is warranted. Obviously the contract is to the advantage of the union and of its employee members. This being so it is a
 
 *445
 
 fair inference that the bargaining committee initiated the negotiations for the provision. The board was thus warranted to find interference by the union with the right of Bezie and other employees to refrain from becoming.members of the union or assisting its activities by taking out a permit, and by so doing the union committed an unfair'labor practice.
 

 The order as against the union required the union to ceasp and desist from: 1. (a) Attempting to induce the company to interfere with its employees in the enjoyment of the rights guaranteed by sec. 111.04, Wis. Stats., to refrain from becoming a member of or assisting the union; (b) inducing the company to discriminate against any of its employees in regard to hire or tenure of employment by requesting the discharge of an employee because not a member of or not having a work permit from the union. As the conduct constituted an unfair labor practice the cease-and-desist orders were proper. 2. Take the affirmative actions, (a) post notices as in Schoe-mann’s case; (b) pay to the company one half the sum it is required to pay Bezie for loss of wages pending discharge and reinstatement; and (c) notify the board in writing within five days from date of receipt of order what steps the union has taken to comply therewith. As to par. (b) of this order we do not find any provision in the act vesting the board with power to require the payment. This provision of the order should therefore be stricken. The other portions of par. (b) seem to us warranted under sec. 111.07 (4) as deemed proper by the board.
 

 The respondent union seems to think the state board is not justified in presenting the instant appeal because the complainants did not appeal and the company did not join in the union’s action for review or participate in the union’s effort to sustain the judgment. The implication is that as none of the parties interested complain of the circuit court’s judgment, the board should not complain. The board properly appealed. The state
 
 *446
 
 board under the state act, like the national board under the national act, “asserts a public right vested in it as a public body, charged in the public interest with the duty of preventing unfair labor practices.”
 
 National Licorice Co.v. National Labor Relations Board,
 
 309 U. S. 350, 364, 60 Sup. Ct. 569, 84 L. Ed. 799, 810. The board is authorized, and it is its duty, under sec. 111.07 (7), Wis. Stats., to take action appropriate to enforcement of its orders, and its appeal herein was in line of its duty. The board’s petition and its appeal from the judgment of the circuit court are fully justified.
 

 By the Court.
 
 — The judgment of the circuit court (in the Schoemanri case) is reversed, and the cause is remanded with directions to enter judgment confirming the order of the Wisconsin Employment Relations Board and commanding its enforcement as prayed in the cross petition of the board.
 

 [1]
 

 Title 29, USCA, sec. 160. Prevention of unfair labor practices— (a) Powers of board generally.
 

 The board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 158) affecting commerce. This power shall be exclusive. .. .
 

 Sec. 157. (National Act.)
 

 Right of employees as to organization, collective bargaining, etc.
 

 Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities, for the purpose of collective bargaining or other mutual aid or protection.
 

 Sec. 158. (National Act.)
 

 Unfair labor practices by employer defined. It shall be an unfair labor practice for an employer—
 

 (1) To interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title.
 

 (3) By discrimination in regard to hire or tenure of employ-
 
 (Continued column 1 page 428)
 

 Sec. 111.04. (State Act.)
 

 Rights of employees.
 

 Employees shall have the right to self-organization and the right to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in lawful, concerted activities for the purpose of collective bargaining or other mutual aid or protection; and such employees shall also have the right to refrain from any or all of such activities.
 

 Sec. 111.06 (State Act.)
 

 What are unfair labor practices.
 

 (1) It shall be an unfair labor practice for an employer individually or in concert with others:
 

 (a) To interfere with, restrain or coerce his employees in the exercise of the rights guaranteed in section 111.04.
 

 (Continued column 2 page 428)
 
 
 *438
 
 ment or any term or condition of employment to encourage or discourage membership in any labor organization:
 
 Provided,
 
 that nothing in sections 151-166 of this title or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization (not established, maintained, or assisted by any action defined in sections 151-166 of this title as an unfair labor practice) to require as a condition of employment membership therein, if such labor organization is the representative of the employees as provided in section 159 (a) of this title, in the appropriate collective-bargaining unit covered by such agreement when made.
 

 (c) To encourage or discourage - membership in any labor organization, employee agency, committee, association or representation plan by discrimination in regard to hiring, tenure or other terms or conditions of employment; provided, that an employer shall not be prohibited from entering into an all-union agreement with the representatives of his employees in a collective-bargaining unit, where three-quarters or more of the employees in such collective bargaining unit shall have voted affirmatively by secret ballot in favor of such all-union agreement in a referendum conducted by the board. . . .