491 P.2d 24

**Richard L. HARRIS, Superintendent of Schools in and for the County of Maricopa, Appellant,**

v.

**E. C. HOELZEN, Jr., et al., Appellees.**

**No. I CA–CIV 1487.**

Court of Appeals of Arizona,
Division 1,
Department B.

Dec. 6, 1971.

Moise Berger, Maricopa County Atty. by Albert Firestein, Deputy County Atty., Phoenix, for appellant.

Walters & Haien by Charles N. Walters and Herbert Mallamo, Phoenix, for appellee Hoelzen.

Gary K. Nelson, Atty. Gen. by Frank Sagarino, Asst. Atty. Gen., Phoenix.

JACOBSON, Presiding Judge.

This matter involves an attempted appeal by the Superintendent of Schools for Maricopa County from a judgment of the Superior Court of Maricopa County declaring null and void an order of the Board of Supervisors of Maricopa County transfer-

ring a portion of the area of Paradise Valley School District to the Glendale Union High School District and the Washington Elementary School District.

The special action before the trial court was instituted by Appellee-plaintiff, E. C. Hoelzeu, a resident of the Paradise Valley Elementary and High School Districts, against the Maricopa County Superintendent of Schools, the Board of Supervisors of Maricopa County, and the various school districts involved in a change of territory known as the Ocotillo Hills area from the Paradise Valley School Districts to the Glendale and Washington School Districts. As indicated, the trial court declared the various orders of the Board of Supervisors effecting this change to be null and void. Neither the board of supervisors, nor the various school districts involved has appealed from this judgment. The only appeal taken was by the county superintendent of schools who attempts to raise the issue of the validity of the board of supervisors' order.

We are initially faced with the question of whether this appeal must be dismissed on the ground that the county school superintendent may not maintain this appeal because he is not a "party aggrieved" within the meaning of Rule 73, subsec. a, Rules of Civil Procedure (16 A.R.S.).[1]

Because of our determination of this issue, we need not set forth a lengthy factual predicate underlying the action taken by the board of supervisors which affected the boundaries of these school districts.

█ Rule 73, subsec. a, Rules of Civil Procedure (16 A.R.S.), provides that a judgment or order in a civil action may be reviewed by appeal and then adds: "the appeal may be taken by any *party aggrieved* by such judgment or order." The

presence of a "party aggrieved" before this court is a prerequisite to the exercise of our appellate jurisdiction. Christian v. Cotten, 1 Ariz.App. 421, 403 P.2d 825 (1965). A "party aggrieved" has been succinctly defined in the case of Farmers Insurance Group v. Worth Insurance Co., 8 Ariz.App. 69, 443 P.2d 431 (1968):

> "In order to have an appealable interest in a judgment, the judgment must operate, by its own force, on the property rights of such person, or bear directly upon one or more of his personal interests; there must be a substantial grievance—a denial of some personal or property right or the imposition of a substantial burden or obligation. (cases cited). Mere disappointment in a result does not constitute aggrievement sufficient to support an appeal. (cases cited)." 8 Ariz.App. at 71, 443 P.2d at 433.

█ Is then, the county school superintendent a "party aggrieved" within this definition by either an order of the board of supervisors or a judgment of the superior court affecting the boundaries of school districts within his county? Under the statutory authority and duties given a county school superintendent, we think not.

By A.R.S. § 15–102, the county school superintendent has the mandatory task of transmitting to the board of supervisors before a specified date, a transcript of the boundaries of the school districts within his county. However, it is clear from this section that this transmittal duty is a ministerial one only, for changes in these boundaries can only be effected by means set forth in other statutes of the education title.[2]

Under the education title, there are five separate actions which school board trust-

---

1. This question was originally submitted to the court by way of a motion to dismiss the appeal prior to the answering brief being filed. At the time the motion was filed, this court denied the same. We now feel that denial to have been in error for the reasons set forth in this opinion.

2. A.R.S. § 15–402, subsec. C provides:
   "The boundaries of a district shall not be changed except as provided in this title and then only after the trustees of districts affected have had written notice of the proposed change from the county superintendent and have had an opportunity to be heard."

ees may take which will affect the boundaries of their district:

1. Expanding school boundaires to take in unorganized territory[3] or diminishing the territory of the school district. A.R.S. § 15–403, subsec. A.

2. Expanding school boundaries by taking in a portion of organized territory of another district. A.R.S. § 15–403, subsec. B.

3. Annexation of one district by another. A.R.S. § 15–403.01; A.R.S. §§ 15–406 and 15–407.

4. Consolidating existing school districts. A.R.S. §§ 15–409 and 15–410.

5. Lapsing of school districts. A.R.S. § 15–413.

Analyzing the powers of the county school superintendent in relation to each of these situations, we find:

Under A.R.S. § 15–403, subsec. A (this was the section employed by the school districts involved in the instant litigation) the county school superintendent acts as a depository for petitions seeking the inclusion of unorganized territory or the diminution of existing boundaries. Further, the county school superintendent is required to approve or disapprove the petitions and forward the same to the board of supervisors. However, it is again clear that the approval or disapproval process is without any conclusive effect for the statute provides: "the superintendent shall approve or disapprove the petition" and transmit it to the board of supervisors whose *action on the petition shall be final*. It is thus apparent that the final arbiter of the change in boundaries under this section, is not the superintendent but the board of supervisors, who may disregard any approval or disapproval of the superintendent.

A.R.S. § 15–403, subsec. B, dealing with the change of school district boundaries af-

fecting organized territories, does not enlarge the duties of the superintendent over those required under subsection A of the same statute.

In the case of annexation, the Arizona Supreme Court has already characterized the power of the county school superintendent:

"The superintendent of schools is given no power to pass upon, approve, or reject petitions for annexation. That is a function of the trustees of the school district to whom petition is addressed, and their action of approval is final * * *." Valley Center School District No. 20 v. Hansberger, 28 Ariz. 493, 496, 237 P. 957, 958 (1925).

In the case of consolidation of school districts under A.R.S. §§ 15–409 and 15–410, the power to consolidate is vested in the electors who exercised that power through an election called for that purpose.

Finally, in the case of lapsing school districts, because of lack of pupils, the statute (A.R.S. § 15–413) is clear that only the board of supervisors may declare the district lapsed and attach the territories thereof to an adjoining school district.

Thus, it is apparent that insofar as changing the boundaries of school districts within the county is concerned, the county school superintendent acts merely as a depository and a conduit, his acts being ministerial in nature—the actual determinational power being vested either in the board of supervisors, the trustees, or the electorate. Therefore, an act of the board of supervisors or a judgment of a superior court effecting the boundaries of school districts within the county does not affect the supervisorial control of the county school superintendent, (*see*, Securities and Exchange Commission v. United States Realty & Improvement Co., 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940)); nor

---

3. "Organized territory" refers to land already situate within the boundaries of an organized school district. "Unor-

ganized territory" refers to lands which are not within the boundaries of any organized school district.

affect any ruling of the superintendent, (*see*, In re Foy, 10 Wash.2d 317, 116 P.2d 545 (1941)); nor have the effect of controlling or limiting the jurisdiction of the superintendent, (*see*, Koehn v. State Board of Equalization, 50 Cal.2d 432, 326 P.2d 502 (1958)); nor affect any ruling made by the superintendent, (*see*, International Union, etc. v. Wisconsin Emp. Rel. Board, 245 Wis. 417, 14 N.W.2d 872 (1944).)

■ While the superintendent may well be a proper party to an action affecting school district boundaries to prevent him from carrying out, in his ministerial capacity, the mandates of other parties, he is not a necessary party to such an action unless the action seeks to require or prohibit an act of the county school superintendent in his ministerial capacity. *See*, Webb v. Superior Court In and For Yavapai County, 103 Ariz. 110, 437 P.2d 426 (1968).

■ Nor does the fact in this case that the judgment of the Superior Court enjoins the appellant from changing the boundaries of Paradise Valley School District, in our opinion, raise the superintendent to the status of a "party aggrieved". This is for the reason that the same judgment declared the action of the board of supervisors changing the Paradise Valley School District boundaries null and void. Without such an order from the Board of Supervisors the County School Superintendent was powerless to act in any event and the injunctive language of the judgment directed to the superintendent becomes surplusage.

For the foregoing reasons we hold that a county school superintendent is not a "party aggrieved" by an action of the superior court affecting school district boundaries within the county. Having no other appellant before us, we lack jurisdiction over this appeal.

Appeal dismissed.

EUBANK, J., and STEVENS, J., Department A, concur.