211 P.3d 1235

**Dr. Sandra DOWLING, in her official capacity as Superintendent of Schools, Maricopa County, Arizona, and as ex officio Member of the Governing Board of Maricopa County Regional School District No. 509, Plaintiff/Counter–Defendant/ (CV 2006–014285) Defendant/Counterclaimant/(CV 2006–052611)/Appellant,**

**v.**

**Don STAPLEY; Fulton Brock; Andrew Kunasek; Mary Rose Wilcox; and Max W. Wilson, in their official capacities as members of the Board of Supervisors, Maricopa County, Arizona, Intervenors (CV 2006–014285)/Defendants/Counter–Claimants/ Third–Party Plaintiffs (CV 2006–052611)/Appellees,**

**and**

**David Schweikert, in his official capacity as Maricopa County Treasurer, Plaintiff/Counter–Defendant (CV 2006–014285)/Third–Party Defendant (CV 2006–052611)/Appellee,**

**and**

**Maricopa County Regional School District No. 509, Defendant/Counterclaimant (CV 2006–014285)/Plaintiff/Counter–Defendant (CV 2006–052611) Appellee.**

Nos. 1 CA–CV 07–0745, 1 CA–CV 07–0891.

Court of Appeals of Arizona,
Division 1, Department E.

April 16, 2009.

See also 218 Ariz. 80, 179 P.3d 960.

Cantelme & Brown, P.L.C. By David J. Cantelme, D. Aaron Brown, Samuel Saks, Phoenix, Attorneys for Sandra Dowling/Appellant.

Shughart Thomson & Kilroy, P.C. By Thomas K. Irvine, Rebekah W. Francis, Phoenix, Attorneys for Board of Supervisors, Maricopa County Arizona/Appellees.

Greenberg Traurig, L.L.P. By Pamela M. Overton, Jennifer M. Dubay, Clete P. Samson, Phoenix, Attorneys for David Schweikert and Maricopa County Regional School District No. 509/Appellees.

## OPINION

KESSLER, Judge.

¶ 1 Dr. Sandra Dowling, former Maricopa County Superintendent of Schools ("Dowling" or "Superintendent"), appeals from the superior court's order granting the motion of the Maricopa County Board of Supervisors ("Board") to strike her various motions ("Strike Order") in Nos. CV 2006–014285 ("Treasurer Case") and CV 2006–052611 ("District Case").[1] The Superintendent argues that the Strike Order erroneously stripped her of her status as a party and in effect denied her all relief. Additionally, she appeals from the superior court's appointment of receivers, the court's denial of her motion to intervene, and its approval of a settlement among the other parties. For the reasons stated below, we dismiss the appeals from the order appointing receivers and the order approving the settlement, and affirm the orders striking her motions and denying her motion to intervene.

---

1. As of January 1, 2009, Dr. Don Covey succeeded Dowling as Superintendent. In addition, at the time of this opinion, Charles Hoskins is the Maricopa County Treasurer. Pursuant to our request, Dr. Covey informed the Court that he desires to pursue this appeal. This Court can, but is not required, to substitute Dr. Covey and Mr. Hoskins as parties. Ariz. R. Civ. P. 25(e)(1).

Dowling has moved this Court for such a substitution as to the Superintendent. Given the procedural complexity of this matter, we deny that motion as substitution has no substantial effect on the rights of the parties in their official capacities, *id.*, and the presentation of the facts and issues is assisted by retaining the original names.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 The procedural history of this litigation, which is the focus of these consolidated appeals, is reminiscent of Daedalus' labyrinth. Like Theseus and Ariadne, we attempt to use a detailed history of the litigation as a thread to guide us through this maze and resolve the issues presented.

*Underlying Facts and Dowling's First Special Action*

¶ 3 Dowling served as the duly elected Superintendent since 1988, and as such served as the sole member of the Governing Board of the Maricopa County Regional School District, which is also known as the Accommodation School District ("District"). In April 2006, the Board voted unanimously to terminate educational services offered to homeless children and alternative educational programs through accommodation schools as previously offered pursuant to Arizona Revised Statutes ("A.R.S.") section 15–308(B) (Supp.2008).[2]

¶ 4 On June 1, 2006, the Superintendent filed a special action in superior court seeking declaratory and injunctive relief. Specifically, she requested that the Board's resolution to close the accommodation schools be declared null and void arguing that the Board did not have the authority to close District-run schools for homeless children. The Superintendent also sought to enjoin the Board from taking action to enforce the closure resolution. The superior court accepted jurisdiction and entered a final order granting declaratory, but not injunctive, relief. The Board appealed to this Court, which affirmed the decision as modified. *Dowling v. Stapley*, 218 Ariz. 80, 179 P.3d 960 (App. 2008) ("*Dowling I*").[3]

¶ 5 After the superior court issued its special action ruling, the Board adopted a resolution determining that the District did not need further funding from Maricopa County ("County") for 2006–07 if the District was being properly managed. The Board stated in the resolution that the District had a current fiscal deficit and the Board had attempted to adopt a comprehensive fiscal resolution to deal with the alleged crisis in the District, but that no balanced budget had been presented to it. Accordingly, it found that the District Governing Board was improperly managing the District. It resolved that Dowling as Superintendent should be delegated powers to issue vouchers and warrants so that she would be accountable if any expenditure was improper. It also resolved that since the District should not provide accommodation services after June 30, 2006, no funding was necessary for fiscal year 2006–07.

¶ 6 In September 2006, the Board withdrew authority delegated to the Superintendent to draw warrants against the special county school reserve fund ("Special County Reserve Fund") for the accommodation schools operated by the District. Additionally, the then-County Treasurer David Schwei-

---

2.  A.R.S. § 15–308 provides that "[a] county may offer educational services to homeless children or alternative education programs ... through an accommodation school." Although tautological, an accommodation school is defined, in pertinent part, as "[a] school that provides educational services to homeless children or alternative education programs as provided in § 15–308, subsection B." A.R.S. § 15–101(1)(b) (Supp.2008). In this case, the District's schools included the Pappas schools for homeless children, a juvenile detention facility, and schools related to the Maricopa County Jail.

    We cite to the current versions of the applicable statutes because no material changes relevant to this case have occurred.

3.  In *Dowling I*, this Court affirmed the superior court's order denying the Superintendent her requested injunctive relief. However, in interpreting the respective roles of the Superintendent

and the Board under A.R.S. § 15–308, the only issue then before us, we modified the superior court's judgment. We held:

> (1) the county school superintendent has sole discretion to provide the services ... when no monies are required from the involved county; and (2) when monies are required from the county, neither the county school superintendent nor the Board has sole discretion to offer such services, but must work collaboratively such that the Board agrees to fund ... and the Superintendent agrees to 'provide' or implement ... the proposed services.

*Id.* 218 Ariz. at 85, ¶ 13, 179 P.3d at 965. We also held, however, that the Board had the implied, and now express, power under § 15–308(C) to withhold funding for such schools. *Id.* at 86, ¶ 17, 179 P.3d at 966.

kert ("Treasurer") seized the District's State aid, indicating he would apply the funds against the District's debt owed to the County's general fund. Thus, the District did not receive an advancement of State aid for August and September 2006.[4]

*The District and Treasurer File Their Action*

¶ 7 In September 2006, Dowling filed a new special action as Superintendent, and as Superintendent, in her capacity as the sole member of the Governing Board of the District ("District Case"). She asked the court to enjoin the Board to provide $1,250,490.00 to the Special County Reserve Fund for necessary expenses to conduct the accommodation school for fiscal year 2006–07. The Board counterclaimed, contending that Dowling, in her role as Superintendent, had received monies from various school districts in the form of an Indirect Cost Fund, and without the Board's permission had transferred $1.9 million from that fund to the District. The Board alleged that Dowling, both as Superintendent and personally, was liable to the County for those funds. The Board also alleged that the District spent $4.3 million more than allotted to it which came from the County Treasurer's Investment Pool held in trust and alleged that the District, its Governing Board, and the Superintendent, were liable for funds that the Treasurer had not yet recouped. Additionally, the Board filed a third party complaint joining the Treasurer to the lawsuit to ensure that any court order returning funds would be properly enforced.

¶ 8 In the meantime, the Treasurer filed his suit against the District and Dowling in her capacity as the sole member of the District's Board. The Treasurer alleged that he maintained funds for the District and that Dowling presented warrants to him which exceeded the District's deposits so that the District had negative balances in its allocated funds. The Treasurer stated he was no longer honoring warrants for the District because the District no longer had access to the County's general fund. The Treasurer had honored warrants in the past out of a pooled account of monies of all school districts held by the Treasurer. He also alleged that the State had notified him that the District did not submit required financial statements and that the State might withhold aid to the District. The Treasurer sought declaratory relief regarding his duties in handling warrants from the District. In response, Dowling filed a counterclaim, seeking declaratory relief that the Treasurer could not set off any warrants he paid from prior years against monies deposited with him by the District. Additionally, she counterclaimed that the Treasurer could not draw funds or place debits on such deposits except upon warrants issued in fiscal year 2006–07 by the Superintendent.

¶ 9 In the Treasurer Case, Dowling moved for a restraining order, temporary stay, and preliminary injunction consistent with her counterclaim. The court granted temporary relief to Dowling until a fuller evidentiary hearing could be held. Ultimately, the court continued the temporary restraining order against the Treasurer and granted the Board's motion to consolidate the District and Treasurer actions.

¶ 10 In October 2006, the superior court issued a preliminary injunction restraining the Treasurer from: (1) Setting off any warrants he paid as a county expenditure from prior years against money placed on deposit with the Treasurer by the District in fiscal year 2006–07; and (2) Drawing funds from or placing debits against any monies placed on deposit with the Treasurer in fiscal year 2006–07 by the District or on its behalf.[5] In

4. Generally, State aid is distributed ten times per fiscal year, and ordinarily no aid is distributed in August and November. To alleviate potential cash flow problems, school districts may seek advancement of State aid for the two months with the approval of the Treasurer, Director of the Department of Administration, and Superintendent of Public Instruction under A.R.S. § 15–973(C) (2002). Here, on July 31, 2006, the Treasurer, Director of Department of Administration,

and Superintendent of Public Instruction approved the District's request for advancement of State aid. However, the Treasurer rescinded his signature to withhold the advancement of State aid, claiming he had a duty to protect taxpayer dollars.

5. The court later issued amended findings of fact and conclusions of law related to the injunctive relief. Both the Treasurer and the Board appeal-

a separate minute entry, the court indicated that the Treasurer had acted properly when he treated past warrants in excess of the District's available cash balances as general county expenditures, and could continue to do so until the Board and the Superintendent reached an intergovernmental agreement to determine the extent of each party's responsibilities regarding the accommodation schools. The court also indicated that it intended to appoint a mediator to resolve an impasse in reaching an intergovernmental agreement. By November 22, 2006, those mediation efforts appeared to be less than productive and the court indicated to the parties that they had several days to successfully complete the mediation or it would appoint a receiver for the District.

## The Court Appoints a Receivership Board

¶ 11 On November 28, 2006, the Board filed a motion for appointment of a receiver for the District in the District Case. The Board alleged the District was insolvent as a result of being grossly mismanaged and the court could act in its equitable powers to appoint a receiver. The Superintendent opposed the Board's motion for appointment of a receiver, but cross-moved for leave to recuse herself as the sole member of the District Governing Board until the end of her term as Superintendent, or the charges "made against her elsewhere" were resolved in her favor. Although the Superintendent agreed to recuse herself as the sole member of the District Governing Board, she refused to resign "now or ever" as Superintendent. Additionally, the Superintendent argued the superior court did not have lawful authority to appoint receivers, but did not oppose the superior court's temporary appointment of receivers from a list maintained by the State Board of Education until the Board of Education could decide whether to appoint receivers pursuant to A.R.S. § 15–103(F).

¶ 12 On December 1, 2006, the superior court granted the Board's motion and appointed two receivers, who were not from the State Board of Education's list ("December 1

Order"). Instead, the superior court's appointment included two receivers recommended by the Superintendent and Board. The superior court ordered the two receivers to confer in appointing a third receiver. In that order, the court acknowledged that Dowling offered to resign as the sole member of the Governing Board of the District and would "honor her desire to have no role in the management and/or control of such District." The court ordered that "as of the date of this order [Dowling] will have no role in the management or control of the District until further order of this Court." The court also ordered that the receivership board would exercise all powers and duties of the District Governing Board except that it would report to the court as often as necessary and would present a report to the court regarding the District's assets, liabilities, debts, and obligations. The court also ordered that the receivership board was to report to the court on the continued viability of the District and its component schools. The court clarified that the parties were to be identified as the District, which was now run by the receivership board, the Board of Supervisors, and the Treasurer.

¶ 13 The Superintendent filed a motion to alter or amend the December 1 Order. She argued that the December 1 Order did not accurately reflect that she had only recused herself from the District Board and had not resigned, that a technical amendment had to be made to the December 1 Order so the receivers could act independently of the Board, and that she should be listed as a party in her official capacity. She also stated that she recognized the December 1 Order was immediately appealable, but contended that her timely motion to alter or amend tolled the time to appeal. The Board also filed a motion to amend the December 1 Order, requesting that the court include specific statutes in its order to give the receivers full control over the management and operations of the District.

¶ 14 On December 19, 2006, the court met with the parties to hear their differences

ed from that amended order. The Superintendent filed a cross-appeal contending, in part, that the court erred in refusing to enter a permanent

injunction. Those appeals, *Schweikert v. Stapley*, 1 CA–CV 07–0419, were later dismissed.

regarding the December 1 Order. The parties agreed the order could be amended to reflect that the Superintendent had not resigned from the District Governing Board, but only agreed to recuse herself while the receivership was in place and that the order needed a technical change to its language. The Superintendent explained the major point of contention was her role vis-à-vis the receivers. She understood that she was no longer the Governing Board, but she still had duties as the Superintendent, including dealing with the sheriff as to one school which was not part of the District, various ministerial duties, and drawing warrants for the District. In response, the court made clear that the Superintendent was no longer to be involved in the governing and running of the District. It placed the receivership board in charge of the District to determine its solvency, and it required the receivership to take steps to make the District solvent or make a recommendation to the court. Except for the school related to the county jail, which it saw as outside the litigation, the court stated the receivers were to have total control of the District finances, including warrants and vouchers, the Superintendent would not have any say in running the District, and the receivers would act both as a school board and as court officers, reporting to the court about whether the District was solvent and what should be done about it. The Superintendent explained that she did not oppose the appointment of receivers, but was relieved to not be involved, provided she was kept informed of what the receivers were doing. She also explained that subject to further briefing in an effort to convince the court to change its order, she would obey the receivership order.

¶ 15 The superior court also explained that it was not in the business of deciding whether there should be an accommodation school or how much money should be used. It indicated the receivers were to run the District, but could not make the political decision whether the District should remain in existence or the accommodation schools should continue to operate. While the court stated it was attempting to find a temporary solution, it also explained that the receivers should report to it if they found the District was insolvent, find a way to make the School District solvent, or recommend whether it would make more sense to move its functions to another government entity to run. The Superintendent could object to such recommendations.[6] The Superintendent indicated that she was relieved to "pass on the responsibility" to the receivers, presumably referring to the responsibility to run the District.

¶ 16 The Superintendent requested that the motions to alter or amend be argued. In its minute entry, the court set oral argument for January 22, 2007, but also ruled that the Superintendent "[d]oes not rule this school district. She has been removed from it . . . . [but the parties could] file briefs in response to the [c]ourt's comments." No briefs were filed regarding the court's comments.[7]

¶ 17 On December 29, 2006, the Superintendent replied in support of her motion to amend the December 1 Order. In her reply, the Superintendent requested to be included as a party to receive the same information and reports as other parties, and sought standing to appeal the December 1 Order if necessary.

¶ 18 On January 2, 2007, the superior court issued a minute entry on the motions to alter or amend the December 1 Order. The court held both motions were moot given the court's rulings and the parties' agreements, and it would not rule on the parties' motions absent request from counsel. Over the next nine months, the parties did not request a ruling on the motions to alter or amend until after the order striking the Superintendent's pleadings was entered.

6. At one point, however, the court also stated that the receivers could not decide whether to have an accommodation school and that should not be up to the court. However, the court observed that if the parties could not resolve the issue of county funding, the court would resolve that issue.

7. Rather, Dowling waited almost six months to file a motion to clarify the court's order. Dowling's motion requested clarification on whether she was removed from her duties as Superintendent or from her duties as the District Governing Board, which she conceded were transferred to the receivers.

¶ 19 On January 4, 2007, the Board filed a response objecting to the Superintendent's motions for entry of permanent injunction and final judgment and to sever or deconsolidate. The Board argued that numerous issues remained open such as the County overfunding the District by more than $1.2 million above that authorized by state law. Additionally, the Board urged that because both cases had overlapping legal issues, it would be inefficient to litigate the two lawsuits separately so they should remain consolidated. The Board also moved to intervene in the Treasurer's Case.

¶ 20 At the January 22, 2007 hearing—which now concerned other matters—there is no transcript and no indication in the record the Superintendent argued her motion to alter or amend the December 1 Order, or that she requested the court to rule on those motions.[8] The court granted the Board's motion to intervene in the Treasurer's Case and denied the Superintendent's motion for a permanent injunction and to sever or deconsolidate the two actions.

¶ 21 On March 14, 2007, the Superintendent moved to appoint a substitute receiver because two receivers were to step down later that month. Specifically, the Superintendent argued she had standing to nominate a receiver pursuant to the December 1 Order. She also contended that the process of the receivership board was working well and that her prior nominee had determined that the District was solvent. The superior court issued a signed order appointing replacement receivers, but not the one requested by the Superintendent. No appeal was taken from that order.

¶ 22 Approximately one week later, the receivers filed their first report with the court. They reported that they had balanced the District budget for 2006–07 without funding from the County, paid the employees,

and ensured that the District would have a cash and budget balance carry-forward at the end of the fiscal year. Two months later, in May 2007, the receivers filed a more substantive report. The receivers reported in part: (1) They wanted to mediate with the Board of Supervisors to determine the extent of the District's debt and how it was allowed to accumulate; (2) They had major concerns about the financial viability of the District; (3) They planned to study continuation of the Pappas middle and high schools because the schools might not be financially viable; and (4) Since the federal government's authority for a separate school for homeless children might be removed, the District had to develop contingency plans for each student to be placed in other schools and a decision made on the financial viability of the school.

*Voluntary Dismissal of Claims Against Dowling*

¶ 23 The Board then moved for a voluntary dismissal without prejudice of its counterclaim in the District Case seeking damages from the Superintendent in her capacity as Superintendent. Through discovery, the Board had learned that there were no non-County funds available to pay a judgment against the Superintendent for the money she allegedly misappropriated from County taxpayers. Additionally, the Board argued that Dowling had clarified that she had not brought the District Case in her role as Superintendent, but as the Governing Board for the District.[9] Thus, a counterclaim against her in her official capacity as Superintendent would be improper. Dowling opposed the motion, arguing it should be with prejudice but also contending that her duties as Superintendent were coterminous with her duties as the *ex officio* member of the District Governing Board so she was a party in her role as Superintendent. Dowling also

---

8. The Superintendent did not provide this court with a full transcript of the January 22, 2007 hearing on appeal.

9. This argument was based on representation from the attorney who filed the District Case, John McDonald, that he only represented the District and named the Superintendent simply to avoid anyone claiming she was a necessary party to the lawsuit. David Cantelme, who was also

arguing for the Superintendent, explained that he represented the District only on limited matters, Mr. McDonald represented the District on everything else, and otherwise Cantelme represented the Superintendent on most other matters related to the case. The court made it clear that the District's attorney, representing the receivership board, was Mr. McDonald.

claimed the counterclaim was filed against her personally. The superior court granted the Board's motion and noted that dismissing the Board's claim against the Superintendent would not violate the substantial rights of any party. The Board then dismissed the counterclaim against Dowling personally even though it said it did not believe the counterclaim was against Dowling in her personal capacity.

*The First Strike Order*

¶ 24 The Superintendent then moved to dissolve the receivership. The Superintendent argued that the superior court appointed the receivers in response to the Board's motion in its counterclaim in the District Case, and since the superior court dismissed the counterclaim upon the Board's motion, it should also dismiss the receivers. Additionally, the Superintendent argued the receivers had fulfilled their ministerial role over the District's finances, and the District was financially stable.

¶ 25 The Board filed a motion to strike the Superintendent's motion to dissolve the receivership and another motion by Dowling for the court to review certain actions of the receivers. The Board contended that Dowling could not file the motions because she was no longer a party to either action, that the receivers were appointed in the consolidated cases, and that the District was not financially viable. It contended that the receivers reported that the District owed the Treasurer's Investment Pool approximately $2.4 million and that if the interlocutory injunction was lifted, the debt would have to be paid and the District could not financially survive. Dowling replied that she was a party in her capacity as Superintendent in the Treasurer's Case, where the issue of a permanent injunction was still pending, and that she had only been removed in her role as the sole member of the District Governing Board until the receivership ended. In response, the Board pointed out that the Superintendent had not been a party to the Treasurer's Case, but that declaratory judgment action had been brought against the District and its Governing Board. In fact, the Treasurer's complaint named Dowling as a member of the District Board and alleged that Dowling, as Superintendent, was the sole member of the Board.

¶ 26 While these motions were pending, in July 2007, the receivers filed another report indicating continuing problems with the District despite their plan to keep the Pappas schools open for the 2007–08 school year. Those problems included: (1) Funds planned for the detention schools had been diverted to the Pappas schools; (2) The receivers had entered into an intergovernmental agreement to obtain federal funds but the Superintendent had delayed the process so that such funding was in jeopardy; (3) A YMCA program had been closed because of administrative problems and the services were improperly procured by the District which might lead to litigation; (4) Two illegal loans were made to the District by the Superintendent; (5) An inaccurate count on homeless students; (6) The receivers had insufficient data to make decisions; (7) School administrators were regularly meeting with Dowling despite the court's order that she have no role in the management and control of the District; and (8) District supervisors were on home assignment because they were uncooperative with the receivers. By this time, the case had been assigned to a new judge, who asked for clarification on what motions were still pending. Neither the Board nor the Superintendent raised the issue of the earlier motions to amend the December 1 Order.

¶ 27 The court granted the Board's motion to strike the Superintendent's pending motions (the "Strike Order"). The court concluded that since the Superintendent had voluntarily recused herself as the Governing Board, and all the claims brought against her had been dismissed without prejudice, the practical and legal effect of these actions was that the Superintendent had no role to play as a party to these cases.

¶ 28 The Superintendent filed a motion for reconsideration asking the superior court to reconsider its decision granting the motion to strike. The Superintendent argued that her statutory duties were usurped by the receivers, causing her "personal palpable" injury. The court denied the Superintendent's motion while reaffirming its prior ruling striking

the Superintendent as a party. The superior court entered a signed order to this effect on September 6, 2007 without including any language pursuant to Arizona Rule of Civil Procedure 54(b). On September 10, 2007, the Superintendent filed a notice of appeal.

### Post–Strike Order Filings and the Motion to Intervene

¶ 29 On September 26, 2007, the Superintendent lodged a draft amended order appointing the receivers and a proposed order granting her motion to alter or amend the superior court's December 1 Order. The Superintendent argued that the December 1 Order failed to include her as a party. Additionally, on September 28, 2007, the Superintendent filed motions to stay the Strike Order, and to intervene in her official capacity in both cases to defend her interests. The Superintendent argued the motions were necessary because of a possible settlement between the receivers and Board which would close the Pappas accommodation schools. The Superintendent argued that she had the sole power to close those schools and opposed such a closure. Furthermore, the Superintendent argued failure to grant the stay would result in closure of the educational programs offered to homeless children.

¶ 30 The Board, joined by the receivers, moved to strike the Superintendent's motions for an amended order appointing receivers and her draft order granting the Superintendent's motion to alter or amend the December 1 Order. The Board claimed in part that the Superintendent, in her capacity as Superintendent, was never a party to the litigation, and argued that the appeal already divested the superior court of jurisdiction on this issue. Both the receivers and the Treasurer also opposed Dowling's motion to intervene. The receivers argued that the court appoint-

ed them and that they had ensured the District's solvency through the 2006–07 school year, but noted that it had a $750,000 deficit with a projected deficit exceeding $1 million if it continued. The stipulated settlement would permit the District to operate for the rest of the 2007–08 year.

### The Settlement and Stipulated Judgment

¶ 31 While these motions were pending, the Board, the Treasurer, and the District stipulated to the entry of final judgment awarding the Board $4.8 million, including $2.9 million in accumulated deficit and $1.9 million in debt, plus interest against the District on its counterclaims in the District Case. As part of the settlement, the parties recounted that the District was operating at a current cash deficit and had an alleged deficit of $4.8 million which it would be unable to pay, the District would have insufficient cash to meet expenses in the 2007–08 school year, and that the District was inadequately meeting the needs of homeless children in its schools. Accordingly, the parties agreed: (1) The Pappas accommodation schools would be closed after the 2007–08 school year, but the County would provide necessary funds to keep the District schools open during the 2007–08 school year; (2) The Board would give priority to transfer Pappas teachers and administrators to other schools; (3) A judgment against the District would be entered for $4.8 million, but the County would not seek to execute on the judgment until after June 2008; (4) The County and the Treasurer would dismiss the appeal from the preliminary injunction, and that they, with the District, agreed that the preliminary injunction would remain in effect until June 30, 2008; (5) The District and the County would enter into an intergovernmental agreement; [10] (6) None of the parties were making

10. Under the intergovernmental agreement, the District, through the receivers and the Board, agreed that: (1) The County would not be liable to the District for any funds under A.R.S. § 15–1001(A)(5) (2002) until the judgment was paid in full; and (2) The County would forebear from executing on the judgment in 2008–09 if the District limited education services to those required by A.R.S. § 15–913 (Supp.2008), which limited the County's obligation to pay the District § 15–1001(A)(5) moneys only if the judgment were paid in 2008–09 and other overpayments outlined in a letter from the Arizona Department of Education were reimbursed. That latter funding would also be limited to a certain level. The agreement reflected that the Superintendent had no role in the management or control of the District. The agreement also indicated that the receivers were acting in lieu of the Superintendent pursuant to the December 1 Order and the court's December 19 clarification that the receiv-

any admissions of liability; (7) All other claims amongst the parties were released except claims against Dowling in her position as Superintendent or in her personal capacity.

¶ 32 In support of that stipulation, the District filed the receivership board's October 3, 2007 report ("Report"). The Report noted that the receivership had entered into mediation and that the Board and receivers had reached a proposed settlement agreement. The report specified that the parties considered that the District would be in a deficit of $700,000 at the end of the 2007–08 school year causing the schools to close in 2008–09. The Report also stated that the test scores of homeless children in the District were still lower than those of homeless children in other districts. Thus, the receivership recommended integrating the homeless children into district and charter schools in Maricopa County in June 2008.

¶ 33 The Superintendent objected to the entry of judgment, stipulation, and proposed settlement agreement. She claimed the superior court lacked jurisdiction over the matter because there were appeals pending in this Court.

¶ 34 On October 16, 2007, in an unsigned minute entry, the superior court approved the stipulation to enter judgment. It also denied the Superintendent's motion to amend orders, her motion to stay the earlier strike order, and her motion to intervene. The court held the Superintendent lacked standing because she was not a party to the litigation.[11] On October 17, 2008, the superi-

or court entered a signed final judgment approving the settlement.

¶ 35 On November 9, 2007, the Superintendent filed a notice of appeal with this Court. Pursuant to an order of this Court, we consolidated the Superintendent's appeal from the Strike Order (1 CA–CV 07–0745) with her appeal from final judgment (1 CA–CV 07–0891).

## DISCUSSION

### I. Issues on Appeal

¶ 36 On appeal, the Superintendent raises numerous primary issues, some dealing with the appointment of the receivers and others dealing with other aspects of the superior court's rulings. As to the receivership board, she argues: (1) The superior court erred in entering the December 1 Order and lacked jurisdiction to appoint the receivers, thus rendering void the acts of the receivership board, including the settlement; (2) The receivers lost their office once the Superintendent was dismissed from the cases; and (3) She did not consent to the appointment of receivers or waive any objections to their appointment. As to the other rulings below, she contends the superior court erred in: (1) Granting the Strike Order; (2) Denying her motion to intervene; and (3) Approving the settlement and stipulated judgment.[12]

### II. Jurisdiction Over the Appointment of Receivers

¶ 37 Both the Board and the Treasurer argue that this Court lacks jurisdiction over

---

ers could act in lieu of the Superintendent under any statutes authorizing the Superintendent to act for the District.

A.R.S. § 15–913 regards education programs for juvenile detention centers. A.R.S. § 15–1001(A)(5) regards funding for accommodation schools.

11. The court also reiterated its previously-entered Strike Order.

12. The Board contends that issues dealing with the receivership are not properly in the appeal from the Strike Order. We note that the Board's answering brief was filed prior to our order consolidating the two appeals. Thus, except where we conclude we lack jurisdiction over the appeal from the December 1 Order and whether

Dowling may appeal the settlement, it is immaterial whether an issue is raised on appeal from the Strike Order (CV 07–0745) or from the final judgment (CV 07–0891) because the appeal from the final judgment would include appeals from otherwise non-appealable interlocutory orders. *See* A.R.S. § 12–2102(A) (2003) (on appeal from a final judgment, a court has jurisdiction to consider interlocutory orders).

Similarly, we note that Dowling's appeal from the Strike Order, 1 CA–CV 07–0745, is premature because the order granting that motion, thus determining she was no longer a party, did not include language from Ariz. R. Civ. P. 54(b). However, since she later appealed from the final judgment and we have consolidated the two appeals, we have jurisdiction over the appeal from the Strike Order pursuant to § 12–2101(A).

the appeal from the December 1 Order because that order was appealable under A.R.S. § 12–2101(F)(2) (2003), and the Superintendent did not appeal from that signed order until after entry of final judgment. The Superintendent contends that the time to appeal was tolled because her timely motion to alter or amend the order was not denied by a signed minute entry. The Board and the Treasurer in turn contend that no signed order denying the motion to alter or amend was needed to trigger the time to appeal, and in any event, the Superintendent waived her right to appeal from that order because she accepted the benefits of the December 1 Order.

¶ 38 We hold that we lack jurisdiction over the appeal from the December 1 Order. Accordingly, we will not address the issue of whether the superior court had jurisdiction to appoint the receivers.[13]

¶ 39 Generally, a party must file a notice of appeal within thirty days of the entry of an appealable order pursuant to Arizona Rule of Civil Appellate Procedure ("ARCAP") 9. An order appointing receivers is an appealable order, and the December 1 Order here was signed and filed. A.R.S. § 12–2101(F)(2); *Gravel Resources of Ariz. v. Hills*, 217 Ariz. 33, 36, ¶ 5, 170 P.3d 282, 285 (App.2007). The time to appeal is tolled if a party timely files a motion to alter or amend the signed order. ARCAP 9(b). As Dowling contends, the time to appeal begins to run again upon filing of a signed order disposing of or resolving the tolling motion. *See* ARCAP 9(b) ("[e]ntry of an order occurs when a signed written order is filed with the clerk of the superior court."); *Klebba v. Carpenter*, 213 Ariz. 91, 92 n. 3, ¶ 6, 139 P.3d 609, 610 n. 3 (2006); *Barassi v. Matison*, 130 Ariz. 418, 420, 636 P.2d 1200, 1202 (1981); *Eaton Fruit Co. v. Cal. Spray–Chem. Corp.*, 102 Ariz. 129, 130, 426 P.2d 397, 398 (1967); *Kenyon*, 5

Ariz.App. at 269 n. 2, 425 P.2d at 580 n. 2. *See also* 1 ARIZONA APPELLATE HAND-BOOK, § 3.4.1.2.4 (Philip A. Hall & Thomas Dennis, 4th ed. and 2006 Supp). If we were to apply this rule in this case, we would hold that the time to appeal from the court's December 1 Order did not begin to run until entry of final judgment, at which time those motions were deemed denied as a matter of law. *State v. Hill*, 174 Ariz. 313, 323, 848 P.2d 1375, 1385 (1993). Here, however, we do not apply that rule for three reasons.

¶ 40 First, the Superintendent's actions constitute an abandonment of her motion to alter or amend the December 1 Order, thus triggering her time to appeal from that order. The superior court stated that it would not rule on the motions to alter or amend because they were moot. In meeting with the parties on December 19, the Superintendent indicated that while she thought the order should be amended, she was relieved to be removed from having anything to do with running the District and would obey the court's order. Additionally, the court noted that if any of the parties wanted a ruling on the motions, it should request one. None of the parties made such a request until after the court had dismissed the Superintendent as a party in the first Strike Order; nor has the Superintendent provided us with a transcript from the January 22 hearing at which those motions were to be argued. We assume that the parties either affirmatively did not ask for a signed order or simply did not raise the issue of a signed order. *Johnson v. Elson*, 192 Ariz. 486, 489, ¶ 11, 967 P.2d 1022, 1025 (App.1998). Additionally, the parties failed to request an order on July 23 when the court asked an open-ended question of whether there were pending matters to discuss. Consequently, the time to appeal from the December 1, 2006 order expired at the latest thirty days after the entry of the Janu-

---

13. Generally, subject matter jurisdiction of the superior court cannot be waived. *Health For Life Brands, Inc. v. Powley*, 203 Ariz. 536, 538, ¶ 12, 57 P.3d 726, 728 (App.2002). However, this principle applies only when the appellant timely appeals from the underlying appealable order or judgment, but has failed to raise subject matter jurisdiction below. *Butler Prod. Co., Inc. v. Roush*, 145 Ariz. 32, 32, 699 P.2d 906, 906

(App.1984) (citations omitted); *Health For Life*, 203 Ariz. at 538, ¶ 12, 57 P.3d at 728. When an appellant fails to properly appeal or loses her right to appeal, however, we cannot address an issue of whether the superior court lacked jurisdiction because the failure to timely appeal deprives this Court of jurisdiction to review the superior court's decision. *Kenyon v. Kenyon*, 5 Ariz.App. 267, 270, 425 P.2d 578, 581 (1967).

ary 2, 2007 minute entry, if not from the December 1 Order.

¶ 41 Second, the Superintendent failed to appeal from the superior court's signed order replacing two of the receivers. Since that signed order is also an appealable judgment, it necessarily denied the motion to alter or amend the December 1 Order as a matter of law. *Hill*, 174 Ariz. at 323, 848 P.2d at 1385.

¶ 42 Third, the Superintendent is estopped from appealing from the receivership order because she accepted the benefits of that order. This Court has held in the context of a receivership that "[a] party who accepts an award or legal advantage under an order, judgment or decree, waives his right to any such review of the adjudication as may again put in issue his right to the benefit which he has accepted." *Rosen v. Rae*, 132 Ariz. 509, 511, 647 P.2d 640, 642 (App.1982) (citing *Finck v. Finck*, 9 Ariz.App. 382, 385, 452 P.2d 709, 712 (1969)).

¶ 43 Here, while the dispute was ongoing, the superior court granted the Board's motion to appoint receivers. Although the Superintendent argued that the superior court did not have the lawful authority to appoint receivers, she repeatedly told the court that she understood, did not object, and was relieved to be removed from the District Governing Board. Additionally, she indicated that she understood and would obey the

court's order that she had no more managerial function with the District. She also agreed that she would recuse herself from the District Board until her term as Superintendent expired or the claims made against her "elsewhere" were resolved in her favor. One of the receivers appointed by the superior court was recommended by the Superintendent herself, and the Superintendent even asked the court to appoint one of her nominees as a substitute when two of the receivers were to step down. Additionally, the Superintendent filed a motion requesting the court to clarify the receivers' role. Finally, upon receipt of the receivers' initial report, the Superintendent filed a motion to dissolve the receivership, arguing it had completed its ministerial role once the District allegedly had become financially stable. Thus, while Dowling may have had disputes about the role of the receivers, she agreed to recuse herself from the District Board in lieu of the receivership until her term expired as Superintendent or the claims against her "elsewhere" were resolved in her favor. She received and accepted those benefits of and participated with the receivership board up until the time the receivers initially thought the District was solvent. The Superintendent was estopped from later seeking to appeal the orders appointing the receivers after they had taken action to which she was opposed.[14]

14. Following oral argument in this Court, Dowling filed a third list of supplemental citations from which she argues, in pertinent part, that she can challenge the jurisdiction of the superior court to appoint receivers at any time. While a party can seek relief from a void judgment at any time by an independent action or seek Rule 60(c) relief, Dowling's authorities do not allow a party to not appeal from a final order, accept benefits from that order, and then seek to appeal from the order. For the most part, Dowling's supplemental citations deal with timely appeals from orders denying post-judgment motions to attack the jurisdiction of the superior court's decisions. *E.g., Andrews v. Andrews*, 126 Ariz. 55, 56–57, 612 P.2d 511, 512–13 (App.1980) (appeal taken from order denying Ariz. R. Civ. P. 60(c) motion). Dowling's reliance on *Am. Credit Bureau v. Pima County*, 122 Ariz. 545, 546–47, 596 P.2d 380, 381–82 (App.1979), is similarly misplaced. There, appellants timely appealed from a post-judgment order denying a motion to vacate a monetary judgment which motion claimed in part that the superior court lacked jurisdiction of the entire matter because no claim had been filed

against the County. While this Court held that the court's earlier Ariz. R. Civ. P. 54(b) judgment on the power of the county sheriff was void so it could be attacked later in the post-judgment motion, there was still a timely appeal from the order seeking to attack the entire basis of the final judgment. Here, in contrast, Dowling abandoned her attempts after the December 1 Order, failed to appeal or seek relief from the second order appointing receivers, and is estopped from challenging the order appointing receivers. Finally, Dowling's reliance on *Arkules v. Bd. of Adjustment of the Town of Paradise Valley*, 151 Ariz. 438, 439–40, 728 P.2d 657, 658–59 (App.1986), is not helpful. There, appellants filed a special action to challenge a town adjustment board's variance for lack of jurisdiction. The superior court granted summary judgment, denied a motion to dismiss on untimeliness and an appeal was taken to this Court. We found that the special action was timely despite a limitations period in the statute if the town's actions were void. That holding does not mean, however, that a party can challenge a superior court's

¶ 44 For all the reasons stated above, we lack jurisdiction over the December 1 Order. Accordingly, we need not address the parties' other arguments on the appropriateness of the December 1 Order or Dowling's argument that the receivers' acts were void because the superior court lacked jurisdiction to appoint them.[15]

### III. Motion to Strike

¶ 45 Dowling contends that the superior court erred in issuing its Strike Order[16] and that this court should review that order *de novo* because the superior court granted the motion to strike as a matter of law. However, Dowling's only authority for such a standard of review is that by analogy, a denial of a motion to strike as a matter of right is reviewed *de novo*. We do not think that analogy withstands analysis. A court's decision to strike pleadings is reviewed for an abuse of discretion. *Birth Hope Adoption Agency, Inc. v. Doe*, 190 Ariz. 285, 287, 947 P.2d 859, 861 (App.1997); *Am. Family Ins. Co. v. Bowen*, 959 P.2d 1199, 1201 (Wyo. 1998). An abuse of discretion occurs when there is no evidence to support a holding or the court commits an error of law when reaching a discretionary decision. *Twin City Fire Ins. Co. v. Burke*, 204 Ariz. 251, 254, ¶ 10, 63 P.3d 282, 285 (2003); *United Imp. & Exp., Inc. v. Superior Court*, 134 Ariz. 43, 46, 653 P.2d 691, 694 (1982). We consider the evidence in the light most favorable to upholding the superior court's ruling. *Boncoskey v. Boncoskey*, 216 Ariz. 448, 451, ¶ 13,

167 P.3d 705, 708 (App.2007) (citation omitted).

¶ 46 Dowling raises four arguments in seeking to reverse the Strike Order:[17] (1) Neither the superior court nor the parties construed the December 1 Order as making her a nonparty; (2) The Strike Order failed to recognize the Superintendent's residual rights under A.R.S. § 12–1241 and Ariz. R. Civ. P. 66(c)(3). Additionally, she was an indispensible party to the litigation thus precluding the Strike Order; (3) The order dismissing the Board's counterclaim recognized the Superintendent's right to participate in the proceedings; and (4) The Treasurer and Board waived any objection to the Superintendent's status as a party before the Board filed its motion to strike.

¶ 47 Most of the Superintendent's argument is based on a misapprehension of the record, which we construe in a light most favorable to supporting the judgment. *Boncoskey*, 216 Ariz. at 451, ¶ 13, 167 P.3d at 708. Essentially, that record supports the Strike Order because by the time that order was issued, Dowling was no longer a party to the litigation. While the superior court at one point viewed the receivership as a temporary solution, it also explained in detail that Dowling was to have no involvement with the District while the receivership board was in place. Additionally, the court explained the receivers were to not only run the District and try to make it efficient, but also to issue a report explaining whether the District was solvent and to make recommendations to the court regarding whether the schools should

ruling as beyond its authority, not appeal, and then seek to file an untimely appeal at any point.

15. Dowling also contends that once the Board's counterclaims were dismissed in the District Case, the receivers had to lose their office because they had been appointed to replace her in her role as the District Governing Board. Dowling's argument misapprehends the effect of the order dismissing the counterclaims. The counterclaims remained against the District; they were only dismissed as to Dowling, both as the Superintendent and in her personal capacity. *Supra* ¶ 23. Accordingly, the basis for the appointment of the receivers remained a legitimate issue in the litigation.

16. Dowling only seeks to reverse the Strike Order, which struck several of her motions, including the motion to dissolve the receivership board.

Her briefs do not address that portion of the October 16, 2007, minute entry which denied her later motion to alter or amend the receivership order and her request for an amended order appointing the receivers.

17. The Board argues that we lack jurisdiction to review the Strike Order because it was merely a procedural order recognizing that Dowling was no longer a party as a result of her having recused herself and the later dismissals of the counterclaims against her. Thus, it argues that the order was not appealable under A.R.S. § 12–2101(D) (2003). As the Board recognizes, however, Dowling could appeal from the interlocutory Strike Order as part of her appeal from the final judgment. A.R.S. § 12–2102(A).

remain open. Dowling agreed to recuse herself from the District Board until her term as Superintendent expired or claims made against her "elsewhere" were resolved in her favor, *supra* ¶ 11, and also agreed with the court's characterization of the order and merely asked to receive the same information and reports as the parties. Additionally, after Dowling agreed to recuse herself as the sole member of the District's board, the Board dismissed its counterclaims against her. While Dowling relies on her special action complaint in the District Case, claiming that she filed it in her role as Superintendent, it was later pointed out to the superior court that the action was brought in the name of the District by the District's attorney and he named her as a party plaintiff solely to ensure no one could argue that a necessary party was unnamed. While the Treasurer's complaint names Dowling as Superintendent and as the sole member of the District Governing Board, this is because in her role as Superintendent she acted as the sole member of the District Governing Board pursuant to A.R.S. § 15–101(12) (" 'Governing board' means ... a county school superintendent in the conduct of an accommodation school.") Consequently, construing the record in the light most favorable to affirming the judgment, the Treasurer's complaint named Dowling in her capacity as the sole member of the Governing Board and not as in her capacity as Superintendent. Once Dowling was removed from the Governing Board, she would not be a party to the Treasurer's Case.

¶ 48 Applying this record to Dowling's first argument underscores her misapprehension of the record as to earlier comments by the superior court and the parties regarding her role in the litigation. Dowling's reliance on comments made at the December 19, 2006 and January 22, 2007 hearings are misplaced

because both comments occurred before the dismissal of the claims against Dowling and the parties' pointing out to the court the clarification of the status in which the actions were filed. Thus, on December 19, the superior court was attempting to sort out the labyrinthian nature of the pleadings. At that point, Mr. McDonald, who had filed the District Case, explained that he only represented the District, not the Superintendent, and that he only named the Superintendent as a party plaintiff to avoid any issue that she was not named as a necessary party. That representation, which was undisputed by Dowling's other attorneys, reflects that the District action actually was brought on behalf of the District with Dowling a party because as Superintendent she was the sole member of the District's Governing Board. When Dowling agreed to be removed from the District Governing Board until her term as Superintendent expired or claims made against her "elsewhere" were resolved in her favor, her status as a party plaintiff also disappeared.

¶ 49 On January 22, 2007, the superior court granted the Board's motion to intervene in the Treasurer's Case. As the court observed, the real dispute was between the Board and the Superintendent over the District schools with the Treasurer caught in the middle. This comment also occurred prior to the dismissal of the counterclaims against Dowling and the parties clarifying what role the Superintendent played in the complaints. Moreover, once the receivership board recommended the closure of the accommodation schools because of insolvency and the poor educational quality provided in those schools, the role of the Superintendent, independent of her prior duties as the sole member of the District Board, had no bearing on the closing of the schools.[18]

---

18. This record also belies the Superintendent's fourth contention that the other parties waived any argument that she was not a party prior to their motion to strike because they had not moved to strike her pleadings earlier. It was only after the receivership board was in place and the court had made clear that the Superintendent was to have no involvement in running the District, the receivers would have authority to recommend closing the District schools, and

the counterclaims were dismissed, that the Superintendent's further role in the litigation could have been challenged. The other parties challenged that role once she changed her position as to recusal from the District Board and began to argue that the receivership should be ended prior to her term as Superintendent expiring or claims made elsewhere were resolved in her favor and by opposing the potential settlement.

¶ 50 Dowling also contends that this Court previously recognized she was a continuing party in the superior court litigation when we issued an October 1, 2007 order denying a motion to substitute the receivership board for the Superintendent in the appeal from the preliminary injunction. *Schweikert v. Dowling*, No. 1 CA–CV 07–0419. That is inaccurate. On August 10, 2007, the Treasurer and Board moved to substitute the receivership board for Dowling as a party to that appeal because she was no longer the sole member of the Governing Board.[19] On October 1, 2007, this Court issued an order holding Dowling should remain a party on appeal from the preliminary injunction because of her "participation in the litigation below." Our ruling had no bearing on whether, in events following the appeal from the preliminary injunction, Dowling should have been considered a party in the superior court litigation.[20]

¶ 51 Second, Dowling argues that the Strike Order failed to recognize her residual rights under A.R.S. § 12–1241 (2003) and Ariz. R. Civ. P. 66(c)(3), which she claims authorized her to move to dissolve the receivership. We disagree. Neither § 12–1241 nor *D & S Farms v. Producers Cotton Oil Company*, 16 Ariz.App. 180, 492 P.2d 429 (1972), on which she relies, provides that the person for whom a receiver is appointed retains the right to move to dissolve the receivership.[21] Any possible right to move to dissolve the receivership is found only in Rule 66(c)(3), which provides, in pertinent part, that "[a] receivership may be terminated upon motion. . . ." That rule, however, is tempered by the appointment and termination of the receivership being governed by principles of equity. *See* Rule 66(c)(4) ("In all matters relating to the appointment of receivers, to their powers, duties and liabilities, and to the power of the court, the principles of equity shall govern when applicable.").

¶ 52 The superior court did not err in striking Dowling's motion to terminate the receivership on this record. Dowling recused herself from the Governing Board and informed the court that she was relieved to have the receivers take over the governance of the District. She agreed to abide by the court's orders on the receivership and made it clear that she felt the receivers would find the District was solvent. It was only after the counterclaim against her was dismissed and the receivers began to report to the court about the nature of the District and Dowling's conduct, adverse to her interests, that she moved to have the receivership terminated and which motion was stricken. Once the receivers were appointed, they stood in her shoes with all rights, causes and remedies which had been available to her, including the right to bring or defend claims for the District. *Gravel Resources*, 217 Ariz. at 37, ¶ 16, 170 P.3d at 287. On this record, the court did not abuse its equitable discretion in striking her motion. Moreover, even had the court not stricken the motion, Dowling presents no argument showing that if the court had considered her arguments, it would have dissolved the receivership. *See* 65 Am. Jur.2d *Receivers* § 66 (2001) (motion to vacate order appointing receivers absent argument court lacked jurisdiction to appoint them, facts previously unknown to court affecting propriety of appointment or change of facts is mere motion for reconsideration). We will not reverse a nonsubstantive error by the court which amounts to harmless er-

---

19. The motion for substitution of party with this Court indicated, "Dowling was only a party to this litigation so long as she served as the Governing Board of Maricopa County Regional School District No. 509. She no longer serve[d] as the Governing Board of the District, and therefore, she [was] no longer a party to this appeal." *Schweikert*, No. 1 CA–CV 07–0419.

20. We also reject Dowling's argument that she remained a party to the superior court litigation because the court had not yet issued a permanent injunction against the Treasurer. Once she recused herself from the District Board until the end of her term as Superintendent or the favor-

able resolution of claims made against her elsewhere in her favor, it was up to the receivership board, not her, whether to pursue the injunction.

21. Dowling's reliance on *Golembieski v. O'Rielly R.V. Ctr., Inc.*, 147 Ariz. 134, 135, 708 P.2d 1325, 1326 (App.1985) and *Burrows v. Taylor*, 129 Ariz. 212, 213–14, 630 P.2d 35, 36–37 (App.1981), is misplaced. Neither case deals with whether a person for whom a receivership is appointed can successfully move to terminate the receivership, but only what parties are indispensible for an appeal.

ror. *Blaine v. Stinger,* 79 Ariz. 376, 380, 290 P.2d 732, 735 (1955) (court will not reverse decision of superior court on motion to strike if appellant would not have been able to obtain relief on merits if motion had been granted); Ariz. R. Civ. P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

¶ 53 As part of her second argument, Dowling also claims that she was an indispensible party because the receivership was seen as temporary and she would be returned to the sole membership of the Governing Board once the receivers had completed their duties. While the superior court at one point characterized the receivership as temporary, it also provided that the receivership was to make recommendations to the court if it found the District was insolvent. Since Dowling had recused herself from the District Board, if the court accepted that recommendation, Dowling would not be returned to her role as the District Governing Board but rather, the District accommodation schools would in essence be closed under judicial supervision.

¶ 54 Dowling also contends she was an indispensable party because the acts of the receivers and any court action on them would affect her independent duties as Superintendent under A.R.S. §§ 15–301(C) and –308(A) and (C). We disagree. As this Court made clear in *Dowling I,* the division of authority over schools in the District as between the Superintendent and the Board was that the Superintendent had sole authority to operate them provided she did not rely on County funds, but the Board could refuse to fund the District. 218 Ariz. at 85–86, ¶¶ 13, 17, 179 P.3d at 965–66. This moots any argument as to the Superintendent's independent duties under § 15–308 because she at no time posited to the court or presented any evidence that she had access to non-County funds under which she could run the District and keep it solvent. Similarly, § 15–301(C)

merely provides that the office of the superintendent is a "[l]ocal education service agency for the purpose of serving as an education service agency that is eligible to receive and spend local, state and federal monies to provide programs and services to school districts and charter schools within that county." We see nothing in that statute which requires the Superintendent to spend money in District 509 or to continue the District in operation when there is evidence the District was insolvent and could not run effectively as a solvent entity.

¶ 55 Third, Dowling contends that the superior court did not intend to substantively prejudice any party by dismissing the counterclaim. If Dowling were not a party, however, her rights would be unaffected by later orders. The superior court made clear in the December 1 Order that the parties would be the District, Board, and the Treasurer. Dowling filed a motion to alter or amend the December 1 Order on the grounds that she was a party to the litigation. During the December 19, 2006 hearing, however, Dowling indicated she understood the court's intent that the receivership board would run the District entirely. In fact, Dowling said she was relieved and merely asked to receive the same information and reports as the parties.[22] After the court ruled the motions to alter or amend the December 1 order were moot, the court expressly stated it would not rule on those motions unless requested to do so by the parties. Dowling did not ask for that ruling until the litigation was almost completed.

¶ 56 Given the above record, we hold the superior court did not abuse its discretion in granting the motion to strike Dowling's motions.

## IV. Intervention

■ ¶ 57 Dowling argues the superior court erred when it denied her motion to intervene both as a matter of right and under permissive intervention. We review *de novo*

---

**22.** We also note that the court indicated that if the receivers made recommendations regarding the District schools, Dowling would have an opportunity to object. *Supra* ¶ 15. However, that statement was made well before the District had dismissed its counterclaims against Dowling and before the parties had brought the point home to the court that the District and Treasurer actions were brought for and against the District, not Dowling in her role as Superintendent.

the issue of whether an applicant established a right to intervene under Ariz. R. Civ. P. 24(a) ("Rule 24"). *Purvis v. Hartford Accident & Indem. Co.*, 179 Ariz. 254, 257–58, 877 P.2d 827, 830–31 (App.1994). On the other hand, we review orders denying permissive intervention under Rule 24(b) for an abuse of discretion. *Bechtel v. Rose*, 150 Ariz. 68, 72, 722 P.2d 236, 240 (1986).

*Intervention as of Right*

¶ 58 Rule 24(a) provides that anyone shall be permitted to intervene in an action:

> (1) [W]hen a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

*See also William Z. v. Ariz. Dep't of Econ. Sec.*, 192 Ariz. 385, 387, ¶ 8, 965 P.2d 1224, 1226 (App.1998). Furthermore, Rule 24 is remedial and should be construed liberally in order to assist parties seeking to obtain justice in protecting their rights. *Mitchell v. City of Nogales*, 83 Ariz. 328, 333, 320 P.2d 955, 958 (1958). However, a prospective intervenor must have such an interest in the case that the judgment would have a direct legal effect upon his or her rights and not merely a possible or contingent effect. *Morris v. Sw. Sav. & Loan Ass'n*, 9 Ariz.App. 65, 68, 449 P.2d 301, 304 (1969) (citing *Miller v. City of Phoenix*, 51 Ariz. 254, 75 P.2d 1033 (1938)).

¶ 59 Although Dowling moved to intervene in her official capacity as Superintendent under Rule 24(a), she failed to identify a statute conferring an unconditional right to intervene under Rule 24(a)(1) and only argued intervention was appropriate under Rule 24(a)(2). Consequently, we must determine whether: (1) Dowling claimed a sufficient interest relating to the District and the accommodation schools; and (2) Disposition of the cases could as a practical matter impair or impede her ability to protect that interest or if her interest was adequately represented by other parties, i.e., the receivership board.

¶ 60 Dowling argued below that the only interest she was seeking to protect was her alleged power to continue the accommodation schools and that the settlement would close those schools. She contends that her interest as Superintendent was whether the accommodation schools should remain open based on the superior court's declaratory judgment in *Dowling I*, the superior court's January 22, 2007 order instructing the receivers that they did not have the authority to close the schools, and Attorney General General Opinion I98-006. The Board and Treasurer argue the court properly denied intervention because the receivership board received full authority to operate the District and received all of its statutory powers and to report to the court on the continued viability of the District and its component schools. Since Dowling only sought to intervene in her official capacity as Superintendent, we focus only on her interests in that capacity.

¶ 61 The parties rely on this Court's opinion in the appeal from the superior court's declaratory judgment in *Dowling I* to support their respective views. Thus, Dowling contends that we recognized she had a bona fide interest because a "[c]ounty school superintendent only has the 'sole discretion' to establish an accommodation school...." *Dowling I*, 218 Ariz. at 85, ¶ 13, 179 P.3d at 965. On the other hand, the Board and Treasurer argue *Dowling I* confirmed the Superintendent did not possess exclusive authority to provide educational services for accommodation schools funded by County monies. *Id.* at 86, ¶ 17, 179 P.3d at 966. We agree that we must look to *Dowling I* to determine whether the Superintendent had a right to intervene. We think that opinion, and its rejection of the Attorney General's opinion cited by Dowling, precludes her on this record from meeting the substantial interest test for intervention.[23]

---

**23.** We note that in ruling on the motion to intervene, the superior court did not have the benefit of our decision in *Dowling I*, but only had the superior court's decision reviewed in *Dowling I*

¶ 62 In *Dowling I*, this Court interpreted A.R.S. § 15–308(B) and held if County funds were not required, the Superintendent had the sole discretion to offer accommodation school services. *Dowling I*, 218 Ariz. at 85, ¶ 13, 179 P.3d at 965. On the other hand, if County funds were required, neither the Superintendent nor the County had the sole discretion to offer accommodation school services. *Id.* Further, § 15–308(C) made express the County's formerly implied authority to decide whether to fund such services. *Id.* at 86, ¶ 13, 179 P.3d at 966. Dowling did not argue to the superior court and does not argue on appeal that she could operate the District without County funding.[24] Accordingly, the final decision in *Dowling I* does not support a substantial interest by the Superintendent which could be affected by the resolution of the litigation.

¶ 63 Similarly, Dowling's reliance on Attorney General Opinion I98–006 to assert that as Superintendent she had a substantial right to intervene is misplaced. As we explained in Dowling I, Opinion I98–006 concluded that the Superintendent had the sole discretion to establish and operate an accommodation school and the Board had the power to budget the funds for the Superintendent to run those schools. 218 Ariz. at 86, ¶ 16, 179 P.3d at 966. We noted that we were not bound by Attorney General opinions and while we agreed largely with the opinion, we held that the Board has the power to exercise its discretion to withhold funding and "[t]he Superintendent only has sole discretion to develop and implement accommodation schools when no [C]ounty monies are involved." *Id.* at 86, ¶¶ 16–17, 179 P.3d at 966.

¶ 64 Finally, Dowling relies on the superior court's January 22, 2007 order to show she had a substantial interest in the litigation. She contends that order instructed the receivers that they did not have the authority to close the schools. We disagree with Dowl-

ing as to the effect of that order. As discussed above *supra* ¶¶ 15, 47, the superior court granted the receivers all authority to represent the District, including its right to sue or be sued. Thus, the receivers were authorized to control any litigation involving the District. The superior court stated that Dowling was to have nothing to do with the District and only agreed to give her notice of further proceedings. It also indicated the parties were the District, as run by the receivers, Treasurer, and County, but not Dowling. Further, during the December 19, 2006 hearing, Dowling contended her concerns with the receivers were actually related to her ministerial duties as Superintendent as well as drawing warrants and vouchers for the District, which the court resolved by authorizing the receivers to take all actions needed for the warrants and vouchers in lieu of the Superintendent. *Supra* ¶ 14. While Dowling objected to whether she would remain a party, she told the court she was relieved the receivers would run the school district entirely. The court's interpretation of the receivers' role left her no interest in the District as Superintendent while the receivership was in place.

¶ 65 Nor is the superior court's statement that the receivership was temporary and the receivers were unauthorized to close the schools a recognition of Dowling's continued interest in the litigation. As explained *supra* ¶ 15, the court also told the receivers they were to operate the District and report recommendations to the court. With that, the court could decide on how to proceed with the District and whether the schools were viable. The receivers included their recommendations in a settlement agreement to close the accommodation schools in the District at the close of the school year because of the debts incurred by the District, its inability to pay those debts or to meet its current fiscal needs, and the poor services being provided to homeless students. As the

---

which interpreted the parties' respective duties under A.R.S. § 12–308. Regardless, we will not reverse and remand a matter to the superior court to do a futile thing. *Levandoski v. Ford*, 52 Ariz. 454, 459, 83 P.2d 281, 283 (1938). Thus, we review the order denying intervention in light of our modification of the declaratory judgment in *Dowling I*.

**24.** Nor does she argue that the matter should be remanded to the superior court for an evidentiary hearing on whether she could have continued the schools without County funds.

court indicated in its final judgment, it was not reaching a policy decision as to the merits of the accommodation schools in the District, but was approving a settlement of the litigation. Therefore, the receivership order did not envision the Superintendent as having an ongoing interest in the District if the schools were to be closed and their functions transferred.

¶ 66 In sum, Dowling does not identify any interest in her independent role as Superintendent which could warrant intervention as a matter of right. Her interest relating to the property or transaction which is the subject of the litigation was not such that disposition would impair or impede her ability to protect that interest. To the extent that the interest was the continued operation of the Pappas schools, that interest was represented by the receivership board.

*Permissive Intervention*

¶ 67 Dowling argues that even if she did not have a right to intervene under Rule 24(a), she was entitled to permissive intervention under Rule 24(b). Under Rule 24(b), "[a]nyone may be permitted to intervene in an action: (1)[w]hen a statute confers a conditional right to intervene[;][and] (2)[w]hen an applicant's claim or defense and the main action have a question of law or fact in common." Courts must first decide whether Rule 24(b)(1) or (2) have been satisfied before granting permissive intervention. *Bechtel,* 150 Ariz. at 72, 722 P.2d at 240. However, because courts construe Rule 24 liberally, "the intervenor-by-permission does not even have to be a person who would have been a proper party at the beginning of the suit...." *Id.* (citation omitted); *see Mitchell,* 83 Ariz. at 333, 320 P.2d at 958 (holding trial court denying appellant right to intervene was not abuse of discretion because Rule 24 should be construed as assisting parties in obtaining justice and protecting their rights).

¶ 68 Even though Dowling argues it was an error to deny her permissive intervention, she does not identify a statute conferring a conditional right to intervene as required by Rule 24(b)(1). Thus, Dowling only relies on Rule 24(b)(2). To determine whether a party should be permitted to inter-

vene under Rule 24(b)(2), courts consider whether intervention would unduly delay or prejudice the adjudication of the rights of the original parties. *Bechtel,* 150 Ariz. at 72, 722 P.2d at 240 (quoting *Spangler v. Pasadena Bd. of Educ.,* 552 F.2d 1326, 1329 (9th Cir. 1977)). In addition, courts consider a number of factors such as the nature and extent of the intervenor's interest, his or her standing to raise relevant issues, legal positions the proposed intervenor seeks to raise, and those positions' probable relation to the merits of the case. *Id.* Based on these factors, we hold the superior court did not abuse its discretion in denying Dowling's motion to intervene.

¶ 69 First, the Superintendent had minimal interest in the litigation at the time she filed her motion to intervene. Dowling's only stated interest in support of her motion was her interest as Superintendent in not closing the Pappas schools. As we held in *Dowling I,* Dowling had exclusive authority to provide the educational services of an accommodation school only if the school was funded by non-County monies. 218 Ariz. at 86, ¶ 16, 179 P.3d at 966. Although the Board could not operate accommodation schools without the Superintendent, it did not need her approval to withhold funding. *Id.* Once the receivers were appointed and given the authority to operate the District and control and resolve this litigation, Dowling lacked any authority to assert the District's legal rights. She identifies no other interests in her independent role as Superintendent which would be affected by the proposed settlement.

¶ 70 Second, Dowling's interest in intervention was to oppose a proposed settlement. To the extent that opposition was based on her view of the interests of the students in the District's accommodation schools, her power to determine those interests had been transferred to the receivers. Thus, she lacked standing to raise those issues. While that position had bearing on the litigated issues, the receivers were in a position to adequately protect the District's interests because they had the authority to resolve ongoing litigation and to enter into a settlement

agreement.[25]

¶ 71 Third, allowing Dowling to intervene would have unduly delayed or prejudiced the litigation. As the receivers' report in support of the settlement showed, the District, the Board, and the Treasurer had been in mediation, the District was operating in a negative cash flow and stated it had insufficient resources to continue the accommodation schools after June 30, 2008. The settlement permitted the District to wind down the accommodation schools in an orderly manner, to place students into other districts and to transfer administrators and teachers in those districts. While the settlement also gave the Board a judgment against the District which would eventually have to be paid, it avoided both further delay of the litigation and keeping the students, teachers, and administrators in limbo for the next school year. Permitting Dowling to intervene to oppose the settlement and continue the litigation between the District, the Board, and the Treasurer, against the wishes of the District receivership board, would have only unduly delayed or prejudiced the adjudication of the District's, County's, and Treasurer's rights.[26]

## V. Settlement Agreement

¶ 72 Dowling argues that the superior court erred in approving the settlement among the receivers, the Treasurer, and the Board because the settlement was unsupported by the facts and violated various constitutional provisions, the court lacked jurisdiction to approve the settlement because of a pending appeal, and the agreement violated various statutes dealing with control of accommodation schools. Generally, we will review the approval of a settlement for an abuse of discretion, reviewing specific factual findings for clear error. *Barmat v. John and Jane Doe Partners*, 165 Ariz. 205, 210–11, 797 P.2d 1223, 1228–29 (App.1990) (abuse of discretion standard); *Associated Aviation Underwriters v. Wood*, 209 Ariz. 137, 171, ¶ 107, 98 P.3d 572, 606 (App.2004) (clear error applied as to factual determination of reasonableness of settlement). *See also In re A & C Prop.*, 784 F.2d 1377, 1380 (9th Cir. 1986) (court reviews approval of settlement for abuse of discretion, reviewing factual findings for clear error and conclusions of law *de novo* ); *Barber v. Barber*, 837 P.2d 714, 716 n. 2 (Alaska 1992) (judicial approval of settlement reviewed for abuse of discretion).

¶ 73 If a settlement is properly before us, we can review it for fairness, reasonableness, and consistency with constitutional and statutory authority. *Tucson Airport Auth. v. Gen. Dynamics Corp.*, 922 F.Supp. 273, 286 (D.Ariz.1996), *aff'd on other grounds*, 136 F.3d 641 (9th Cir.1998). However, before reaching the merits of the superior court's approval of a settlement, we must determine whether the settlement is properly before us. We determine it is not properly before us because Dowling does not have a legally sufficient interest to challenge the settlement.

¶ 74 Generally, if a party seeks to appeal from a settlement, our appeal is limited to determining whether the parties consented to the judgment or settlement. *Cofield v. Sanders*, 9 Ariz.App. 240, 242, 451 P.2d 320, 322 (1969). Thus, while Dowling contended at oral argument before this Court that she became the District Governing Board on June 30, 2008, when the receivership ended, she does not contend that the District did not consent to the judgment. Thus, even if we view her role as appellant as the Governing Board, we will not review the

---

**25.** While Dowling did not contend below that she had any personal interest to protect by intervention, we note she had none. Since the settlement stated that there were no admissions of liability and was not binding on Dowling in her role as Superintendent or personally, she had no separate interest in protecting herself from liability.

**26.** In finding no abuse of discretion, we reject the Board's argument that the motion to intervene should have been denied because Dowling unduly delayed filing the motion. The superior court granted the Board's motion to dismiss its counterclaim against Dowling on June 28, 2007 and did not issue the Strike Order until August 2, 2007. It then denied Dowling's motion for reconsideration of the Strike Order on August 24, 2007. Dowling filed her motion to stay the Strike Order and alternatively to intervene on September 28, 2007.

terms of the settlement on other grounds than lack of consent.[27]

¶ 75 In contrast, a nonparty who is not aggrieved cannot appeal from a settlement among the parties to the litigation; only an aggrieved party can appeal from a judgment. *Abril v. Harris*, 157 Ariz. 78, 80–81, 754 P.2d 1353, 1355–56 (App.1987).[28] This rule also applies to persons who unsuccessfully seek to intervene in a case. *In re Questar Gas Co.*, 175 P.3d 545, 553, 556–59, ¶¶ 30, 44, 57 and 62 (Utah 2007) (reviewing order denying motion to intervene in public service hearing but holding unsuccessful intervener ratepayers and stockholders did not have standing to appeal the final order); *County of Alameda v. Carleson*, 5 Cal.3d 730, 736, 97 Cal.Rptr. 385, 488 P.2d 953 (1971) (unsuccessful intervener cannot appeal judgment, but only order denying intervention).

¶ 76 However, that rule of non-appealability is subject to three exceptions. First, a nonparty denied a request to intervene can appeal from that order, and if we reverse that order, we must also reverse the judgment approving the settlement. *Anderson v. Martinez*, 158 Ariz. 358, 359, 762 P.2d 645, 646 (App.1988).[29] Second, a nonparty may appeal from the settlement agreement if she unsuccessfully sought to vacate the judgment and was substantially aggrieved by the judgment. *County of Alameda*, 5 Cal.3d at 736–37, 97 Cal.Rptr. 385, 488 P.2d 953; *Stonegate Homeowners Ass'n v. Staben*, 144 Cal.App.4th 740, 745 n. 1, 50 Cal.Rptr.3d 709 (2006). Third, a nonparty may appeal if his or her interest is:

[d]irect, substantial, and immediate, one which would be prejudiced by the judgment or benefited by its reversal. A nonparty to an action is prejudiced or aggrieved in the legal sense when a legal right has been invaded or a pecuniary interest is directly, not merely indirectly, affected. The non-party's interest must appear in the record or be alleged in the points relied on for reversal.

*Abril*, 157 Ariz. at 80–81, 754 P.2d at 1355–56 (quoting *Metro. Sanitary Dist. of Greater Chicago ex rel. O'Keefe v. Ingram Corp.*, 85 Ill.App.3d 859, 41 Ill.Dec. 129, 407 N.E.2d 627, 631 (1980), *rev'd on other grounds*, 85 Ill.2d 458, 55 Ill.Dec. 535, 426 N.E.2d 860 (1981)). *Accord County of Alameda*, 5 Cal.3d at 736–37, 97 Cal.Rptr. 385, 488 P.2d 953 (to be aggrieved to appeal from a judgment, nonparty who sought to vacate judgment must have rights or interests directly affected; effect must be immediate, pecuniary and substantial, not nominal or as a remote consequence of the judgment).

¶ 77 Neither of the first two exceptions apply because we have affirmed the order denying Dowling's motion to intervene and Dowling did not seek to vacate the judgment approving the settlement. This leaves only the last exception.

¶ 78 To meet that last exception, it is not enough that the nonparty is adversely affected by the judgment. Rather, the enforceable liability must be substantial and directly caused by the judgment itself. Thus, in *Abril*, this Court held that a party's attorney against whom the superior court had imposed fees had met the standard to appeal as

---

27. In any event, a party has to timely file a notice of appeal. In this case, the District did not file a notice of appeal from the judgment. Dowling also did not file a notice of appeal for the District while acting as the District Governing Board upon the June 30, 2008 termination of the receivership. The only appeal was that filed by the Superintendent, in her role as Superintendent and personally, but not as the District. This does not properly place the settlement before us.

28. This issue can be seen as one of appellate jurisdiction under ARCAP 1, restricting appeals to parties aggrieved by the judgment. *Abril*, 157 Ariz. at 80–81, 754 P.2d at 1355–56. Even a party to a consent judgment is not deemed aggrieved and this court will not review the terms

of the settlement absent an issue of lack of consent to the judgment. *Cofield*, 9 Ariz.App. at 242, 451 P.2d at 322. *See also Farmers Ins. Group v. Worth Ins. Co.*, 8 Ariz.App. 69, 71, 443 P.2d 431, 433 (1968) (party to a declaratory judgment action cannot appeal from the judgment unless it is an aggrieved party, *i.e.*, the "judgment must operate, by its own force, on the property rights of such person, or bear directly upon one or more of his personal interest . . .").

29. Technically, in that instance the nonparty is not appealing from the judgment approving the settlement, but only the order denying intervention. *AMCO Ins. Co. v. Sills*, 166 P.3d 274, 279 (Colo.App.2007).

a nonparty. 157 Ariz. at 81, 754 P.2d at 1356. Compare *Harris v. Hoelzen*, 16 Ariz. App. 74, 75–76, 491 P.2d 24, 25–26 (1971) (county school superintendent is not party aggrieved by order affecting school district boundaries unless it interferes with his ministerial duties as to those boundaries). In contrast, in *AMCO,* the court held that an employee of a construction company who was being sued along with the company for construction defects could not appeal from a declaratory judgment holding that the company's insurer had no duty to defend or indemnify the policy holder when the employee was not a party to that declaratory judgment action. 166 P.3d at 275–77. The court held that despite his potential liability for the costs of defense and any potential judgment, the employee was not substantially aggrieved by the declaratory judgment. *Id.* at 275–76. Simply put, the judgment did not deny him "[s]ome claim of right, either of property or of person, or [impose] upon him of some burden or obligation." *Id.* Further, the fact that the judgment "[e]xposes the nonparty to obligations, claims, or liabilities not created by the judgment ..." is insufficient as opposed to creating an "[e]nforceable liability that did not otherwise exist". *Id.* See also *In re Questar Gas Co.,* 175 P.3d at 559, ¶¶ 58–62 (ratepayers not substantially aggrieved by public service commission order; stockholders in public utility lacked a distinct and palpable injury to qualify as a party aggrieved or substantially prejudiced; public service commission hearing was not geared to protect stockholders from corporate mismanagement); *County of Alameda,* 5 Cal.3d at 737, 97 Cal.Rptr. 385, 488 P.2d 953 (recipients of welfare benefits who would lose benefits under judgment vacating new administrative rule and who had moved to vacate the judgment after unsuccessfully seeking to intervene were directly affected and aggrieved by judgment).

¶ 79 Alternatively, as in the case of public officials, the interest must be separate, immediate, and direct from that of the parties. *Montana Power Co. v. Montana Dep't of Pub. Serv. Regulation,* 218 Mont. 471, 709 P.2d 995, 999–1001 (1985). Thus, in *Montana Power Co.,* the court found that the Attorney General and the State of Montana could not appeal from a trial court ruling remanding a public service corporation ("PSC") rate order because the Attorney General did not intervene in the administrative hearings or the judicial review proceedings. *Id.* The Attorney General conceded he was not representing the public service commission and the commission had agreed to the court's order on the rate increase. *Id.* As the court explained, "The PSC, within the discretion granted to it by law, has acted to approve the District Court decision. There is nothing now for an appellate court to determine. The horse is out of the barn, and it is too late to lock the stable door." *Id.* at 1001.

¶ 80 The third exception also does not apply because the approved settlement agreement expressly denied any admission of liability by any party to the agreement. Moreover, because Dowling was not a party to the litigation at the time the settlement was approved, she is not liable under the judgment in any related litigation between the Board, the Treasurer, and Dowling either in her official role as Superintendent or in her personal capacity. Thus, since the District, the Board, and the Treasurer settled the monetary claims without an admission of liability, the judgment not only is not binding on Dowling in related litigation, but also does not expose her to claims not created by the judgment. *AMCO,* 166 P.3d at 276.

¶ 81 In addition, Dowling's separate rights, independent of the District, are not directly and adversely affected by the settlement. Dowling has made no showing and has not requested an evidentiary hearing to make a showing that she could have operated the District without County funds. As we explained in *Dowling I,* while the Superintendent, in her official capacity, had the independent right to operate the accommodation schools if she could do so without County funds, the Board had the independent right to not fund the schools. *Dowling I,* 218 Ariz. at 85–86, ¶¶ 13, 17, 179 P.3d at 965–66. Since Dowling was no longer the School District Governing Board and made no showing that she could operate the accommodation schools without County funding, the settle-

ment and judgment had no direct and substantial effect on her powers to operate those schools.

█ ¶ 82 In response to this Court's order for supplemental briefing to address the issue of whether the settlement was properly before us, Dowling appears to argue that the receivership ended under the terms of the December 1 Order and she is again the sole member of the District Governing Board and as such, can appeal from the judgment as the District. We do not agree that such an event properly brings the settlement for review in this Court for two reasons. First, a party entering into a settlement can appeal from a judgment to attack the settlement, but only on the grounds of lack of consent. *Cofield*, 9 Ariz.App. at 242, 451 P.2d at 322. Dowling does not contend that the receivers, acting for the District, did not consent to the settlement. Second, even if that were not the case, a party has to timely file a notice of appeal. In this case, the District did not file a notice of appeal from the judgment. Dowling also did not file a notice of appeal for the District, acting as the District Governing Board upon the June 30, 2008 termination of the receivership.[30] The only appeal was that filed by the Superintendent, in her role as Superintendent and personally, but not as the District. This does not properly place the settlement before us. *Cf. Farmers*, 8 Ariz.App. at 72, 443 P.2d at 434 (dismissing appeal when party who was aggrieved by judgment did not appeal and then had appellant allegedly transfer its right to appeal, but not any alleged liability, to the non-appealing party).

¶ 83 Dowling also cites several cases to argue that a person who is the subject of a receivership can appeal from a judgment permitted to be entered by a receiver.[31] None of Dowling's cases are analogous to the situation presented here. In *Granger & Co. v. Allen*, the statement that a corporation may appeal from a judgment obtained against it after the appointment of a receiver was mere *dicta* as the bankrupt corporation in that case was not a party to the appeal. 214 A.D. 367, 212 N.Y.S. 356, 359 (N.Y.App.Div.1925), *aff'd*, 244 N.Y. 587, 155 N.E. 907 (1927). *Granger* relied upon *Auburn Button Co. v. Sylvester*, 22 N.Y.S. 891 (N.Y. Gen. Term 1893). *Auburn* merely held that the imposition of a receivership after both a judgment was entered against the company and the company had appealed from the judgment did not affect the company's right to appeal the pre-receivership judgment because it still owned the property which was the subject of the receivership. *Id.* at 892. *See also Daro Indus., Inc. v. RAS Enterp., Inc.*, 56 A.D.2d 776, 392 N.Y.S.2d 446 (1977), *aff'd*, 44 N.Y.2d 969, 408 N.Y.S.2d 329, 380 N.E.2d 160 (1978) (corporate owner of property in receivership has authority to file a complaint for the corporation without requesting receiver to bring the action because company had title to the company property). Dowling's reliance on *Polk v. Johnson*, 76 N.E. 634 (Ind.App. 1906), is also misplaced. In *Polk*, the court denied a motion to dismiss an appeal brought

---

30. Dowling's notice of appeal refers to her as the Superintendent and as *ex officio* member of the District Governing Board. Since, however, Dowling recused herself from the Governing Board and the superior court ordered the receivers to have all powers for the District, her appeal cannot be on behalf of the District.

31. Dowling makes several other arguments to contend that she is an aggrieved party. We summarily reject those arguments because none of the facts she relies upon directly affect the substantial liabilities and rights of the Superintendent in her role as Superintendent. *Abril*, 157 Ariz. at 81, 754 P.2d at 1356. Thus, Dowling argues that she, as Superintendent, now has to deal with the mutual releases and the intergovernmental agreement portions of the settlement and that she is bound by the monetary judgment against the District, thus making her an indispensable party to the litigation below.

The mutual releases do not directly affect the Superintendent as Superintendent and as we note, *supra* ¶ 80, the Superintendent is not bound by the amount of the judgment. The intergovernmental agreement was to close the accommodation schools, not require the Board and the Superintendent to operate them after the receivership ended. She also contends that the superior court illegally kept the receivership in place after the settlement was approved. That provision does not have a direct impact on her rights and liabilities so as to make her a party aggrieved. Finally, Dowling contends that the County now proposes to transfer the property on which the accommodation schools were operated. Assuming this to be true, the property must belong to Maricopa County to be transferred; thus, any transfer of unused properties is not a direct effect of the settlement on the rights and liabilities of the Superintendent.

by a person in receivership from a judgment awarding part of the property owned by that person to the receiver. *Id.* at 635. The court reasoned that the company, not the receiver, held title to the company property during the receivership and was a party to the action. *Id.* Here, Dowling did not own any property which was controlled by the receivership and did not seek to have the District appeal the judgment. Additionally, the superior court's order expressly provided the receivers were to have all the powers of the District Governing Board, including the right to sue and be sued and to control the District's position in the litigation. Thus, the receivers were not just temporary holders of the District property as in *Polk*, but by court order were in control of running the District and making its litigation decisions until June 2008.[32]

## CONCLUSION

¶ 84 For all the reasons stated above, we dismiss the appeal from the orders appointing the receivers and approving the settlement. We affirm the other orders and judgment of the superior court challenged on appeal.

CONCURRING: PATRICIA K. NORRIS, Presiding Judge and JOHN C. GEMMILL, Judge.

---

**32.** In her supplemental brief and in a post-argument supplemental list of authority, Dowling relies on several treatises and cases to contend that she can appeal from the settlement. We disagree. Dowling's reliance on 2 Ralph Ewing Clark, A Treatise on the Law and Practice of Receivers (3d ed.1959) is misplaced. That treatise relies on the cases cited *supra* ¶ 83 to conclude that the appointment of a receiver does not take away the defendant's right to prosecute an appeal of a judgment against him. *Id.* § 625 at 1022. That conclusion and the cases it relies upon do not deal with a situation in which the receiver is appointed to replace the defendant's position in the lawsuit, rather than merely to manage its assets during the receivership. In contrast, as Clark states elsewhere, the court may order that the receiver carry on the lawsuit in the name of the defendant. *Id.* § 614(a) at 1007.

Dowling also argues that California authority would permit a party adverse to the receiver to seek to vacate the order, petition the court for an order directing the receiver to take specific acts, seek to remove the receiver, appeal the order appointing the receiver or proceed on the receiver's bond for damages. None of the rights or authorities cited in that treatise, however, provides that a party who has been replaced by receivers to prosecute and defend the litigation can later prosecute an appeal from a settlement the receivers entered into for the party they were appointed to control. Indeed, the only two authorities cited stand for the proposition that an appeal can be taken from an order appointing a receiver (Cal.Civ. § 904.1(a)(7)) and that a court cannot order a receiver to violate his attorney-client privilege by disclosing privileged opinions given to him by his counsel. *Shannon v. Superior Court*, 217 Cal.App.3d 986, 998, 266 Cal.Rptr. 242 (1990).